**Horace S. LITTLE, Plaintiff-Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 13808.**

United States Court of Appeals
Seventh Circuit.

Dec. 14, 1962.

Albert H. Manus, Jr., Manus & Manus, Freeport, Ill., for plaintiff-appellant.

James P. O'Brien, U. S. Atty., Frederick E. McLendon, Jr., Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from the judgment of the District Court affirming a decision of the Secretary of Health, Education and Welfare, which held that plaintiff failed to establish that he is entitled to a period of disability under Sec. 216 (i) of the Social Security Act (42 U.S.C. § 416(i) or entitled to disability insurance benefits under Sec. 223 of the Act (42 U.S.C. § 423).

On May 24, 1956, plaintiff Little was employed as a machinist in a factory at Rockford, Illinois, and had been so employed for approximately four years. During that period he had missed only three and a half days from his work. His work record was excellent, and he often worked overtime. His education was limited, having finished grade school, but only one year of high school. Prior to May 24, 1956, he had considerable trouble with varicose veins. In the early 1940s, he had a vein ligation operation at the Mayo Clinic. The varicosities in his legs became worse after May 24, 1956.

On May 24, 1956, while holding a 94 pound steel rod, plaintiff accidentally

stepped off a slightly raised platform, and fell to the floor still clinging to the steel rod to prevent it falling into a nearby machine. He immediately felt a sharp pain in his back which he reported to the management.

The pain continued for several days, becoming more intense. Plaintiff was given lighter work by his employer. In spite of the pain in his back, plaintiff continued work until December 21, 1956. During that interval of time, he was treated first by an osteopath, then by Dr. Lyddon, an orthopedic specialist, then by a general practitioner, and finally, on December 18, 1956, by Dr. Behr, another orthopedic specialist.

On December 21, 1956, plaintiff was admitted to the Rockford Memorial Hospital where, on the following day, Dr. Behr performed surgery on his back and removed a crushed intervertebral disc, more particularly described as a large herniated nucleus pulposus at the level of vertebrae L4 and L5. The immediate result was a lessening of pain, but gradually thereafter his symptoms recurred and the pain became more intense.

As a result of an intravenous injection during his stay in the hospital, a thrombo-phlebitis developed in his arm. He was hospitalized for this condition in March 1957, but the arm condition eventually cleared up. However, the symptoms of pain in his left hip, leg and foot persisted. Dr. Behr prescribed exercise. The plaintiff was referred to Dr. McKinney who recommended that the plaintiff remain inactive.

After plaintiff was dismissed from the hospital for the thrombo-phlebitis condition, he visited Dr. Behr about nine times in April 1957, and was given various types of therapy treatment but the pain in the leg and foot seemed to become more severe.

On April 25, 1957, plaintiff was readmitted to the hospital so that Dr. Behr might take a second myelogram. Later, Dr. Traina, under the supervision of Dr. Behr, gave plaintiff nerve blocks to relieve acute pains in the back. These were administered on May 22, 1957.

In May 1957, plaintiff was examined by Dr. Kernwein, a third orthopedic specialist. This was done at the request of an insurance company. Nerve blocks were administered. Plaintiff had trouble sleeping. He was able to sleep only a couple of hours at a time, and then had to get up and walk around to obtain some relief from pain. The sides of his leg and foot were numb and cramped.

Plaintiff wore a corset or brace more or less continuously from the time he first consulted Dr. Lyddon in the middle of July 1956.

Dr. Robert L. Anderson, a neurologist, examined plaintiff in August 1957. He found lumbodorsal spasms with loss of normal lumbar curve, diminished sensation over the lateral aspects of the thigh and foot. He was also unable to feel arterial pulsations on either side of the leg due to the varicose veins.

Dr. Anderson concluded that plaintiff's back trouble probably was due to irritation of the sacral nerve root, which in turn was probably due to scarring and adhesions resulting from the surgery in December 1956. In May 1958, Dr. Anderson again examined plaintiff and found plaintiff's condition was a little worse as far as his varicosities were concerned, and as far as the movement in his toes was concerned. He also found the circumference of the left thigh had decreased half an inch. He reached the same conclusion as previously given, that the condition was caused by scarring and a possibility of arachnoiditis, which is an inflammatory condition around the roots and lower part of the spinal cord. He advised against a further operation because of existing inflammation, and the difficulty of removing the adhesions and the scarring. He concluded plaintiff's condition was permanent.

Dr. Anderson and Dr. Behr concluded there was a causal connection between the surgery of December 22, 1956 performed by Dr. Behr, and the scarring and adhesions that they diagnosed several months later.

Dr. Behr first recommended a re-operation, but after re-examination and be-

cause of the poor condition of plaintiff's veins and a tendency towards clotting, he changed his recommendation.

In May 1958, plaintiff went to the Mayo Clinic for nine days. He was there advised not to have another operation. On August 1, 1958, plaintiff returned to Dr. Behr who found the symptoms about the same, but that the patient had more numbness and tingling in his leg; that forward motion was limited; that it produced pain in the left leg posteriorly.

Plaintiff has been required to sleep with a board in between the mattress and springs of his bed. At no time since the operation on December 22, 1956, has plaintiff been free from pain. He has had dizziness intermittently. He is able to walk only a short distance at a time and often thereafter becomes tired and dizzy. He has done some light work around the house such as washing dishes and light cooking. He can sit for only a short period of time because the pain increases in his back and legs, but he can obtain some temporary relief by standing. However, he can remain standing only for a short period of time because after he has done so, pain increases in his back and legs.

Dr. Nelson Suma, an orthopedic specialist, who is an assistant to Dr. Behr, found on two occasions that plaintiff was "totally disabled" and "probably totally unrehabilitatable."

During 1957 and 1958, the plaintiff attempted to take a correspondence course in executive training, but was unable to sit up long enough to do the necessary studying and writing, although his wife helped him write some of the answers. Because of pain and dizziness, he had great difficulty in concentrating on his studies, and after completing nine out of the twenty lessons, he was obliged to give up the course.

The State of Illinois Industrial Commission, after full hearings, found that plaintiff had suffered injuries which caused his "complete disability" rendering plaintiff "wholly and permanently incapable of work."

No doctor who has examined plaintiff since his injury, has given the opinion that plaintiff was physically able to resume his job as a machinist. Dr. Anderson, who testified at some length before the Industrial Commission, said that while plaintiff could carry on some physical activities, he couldn't do these things continuously or as a "regular occupation." Dr. Anderson suggested he might work at some occupation where he sits part time and stands part time except for the fact of his "fecal and urinary incontinence." In referring to plaintiff's condition, Dr. Anderson pointed out that muscle spasm caused pain, and then the muscle spasm becomes more aggravated, and that it is a "vicious circle."

■■ We recognize the rule that the findings of the Secretary as to any fact which is supported by substantial evidence shall be conclusive. (Carqueville v. Flemming, 7 Cir., 263 F.2d 875.) But, in the instant case, we do not find such support.

In Teeter v. Flemming, 7 Cir., 270 F.2d 871, there was a fact situation somewhat similar to the case at bar. The claimant had a back ailment for which he wore a brace. He suffered from severe headaches and had been advised at the Mayo Clinic to change his way of life by lessening tension. The Referee found the claimant had not proved he was unable to work, or to do some kind of work "at a decreased tempo." The Secretary moved for a summary judgment. District Judge Swygert denied the motion. On appeal, this Court affirmed, holding that the statute did not require utter helplessness, but only inability to engage in substantial and gainful activity commensurate with one's age, education, job training and experience, and mental and physical capacity.

Another case in this Circuit even more closely in point is Hier v. Ribicoff, S.D. Ill., 194 F.Supp. 22. There, the claimant had eight years of education and worked as a farmer, truck helper and driver, and railroad supervisor and dispatcher. In 1956, he contracted pernicious anemia. A doctor employed by the Secretary ad-

mitted the existence of the pernicious anemia, but said the claimant could work "sitting and using his head." The Secretary speculated as to various types of "sitting" jobs that plaintiff might engage in, such as sorting, packing and light assembly work, with or without the use of tools. This is similar to the instant case where the Secretary speculated that plaintiff could work as a cashier, checker, dispatcher, or receiving or shipping clerk.

In the Hier case, the Court held that Social Security Act disability benefits are not restricted to those who are totally helpless. In the opinion in the Hier case, Judge Mercer quoted, with approval from Aaron v. Fleming, Ala.D.C., 168 F. Supp. 291, 295, stating that the rule was there correctly stated. The quotation is:

"Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bedridden', or 'at death's door'. No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform '*any* substantial gainful activity'. I do not interpret the Act to apply only to the totally helpless and bedridden nor to those at death's door."

In the instant case, we have a man with little more than a grade school education, with experience only in occupations requiring physical exertion far beyond his present capabilities. It is abundantly clear, Little could not engage in any substantial or gainful activity "commensurate with his age, education, job training and experience, and mental and physical capacity."

The judgment of the District Court affirming the decision of the Secretary of Health, Education and Welfare, is reversed and remanded with instructions to vacate and set aside the decision of the Secretary of Health, Education and Welfare.

Reversed.