Simeon R. CHANDLER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 2432.

United States District Court
S. D. Illinois, N. D.

Jan. 17, 1964.

**1002**

Sidney D. Davidson, Cassidy & Cassidy, Peoria, Ill., for plaintiff.

Edward R. Phelps, U. S. Atty., Springfield, Ill., for defendant.

MERCER, Chief Judge.

This case arises upon a complaint to review a decision of the Secretary of Health, Education and Welfare which held that the plaintiff is not entitled to the establishment of a period of disability under Section 216(i) of the Social Security Act or to disability insurance benefits under Section 223 of the Act. 42 U. S.C. §§ 416(i), 423. The cause is now before the court upon cross motions of the respective parties for summary judgment.

In his several applications, the latest of which was filed on November 12, 1958, plaintiff claims that he suffered a disability because of a stomach condition, coupled with inability to digest food, vomiting and convulsions, which prevented him from engaging in any substantial gainful activity from and after May 7, 1956. The denial of his several claims was reviewed by a hearing examiner who rendered a decision adverse to each of plaintiff's claims. The Appeals Council denied the plaintiff's request for a formal review of that decision, and the hearing examiner's decision then became the final decision of the Secretary. This complaint followed.

Under the provisions of Section 205(g) of the Act, 42 U.S.C. § 405(g), the only issue before this court is the question whether there is substantial evidence upon the record as a whole to support the hearing examiner's decision that plaintiff had failed to establish that he had a medically determinable physical or mental impairment, or combination of impairments, which prevented him from engaging in any substantial gainful activity from May 7, 1956, and continuing until November 12, 1958, the date of his most recent application for disability benefits.

The burden of proof was on the plaintiff. It is not the function of this court to make its own appraisal of the evidence. Its only function is to determine whether substantial evidence on the record as a whole supports the findings of the hearing examiner. Degner v. Celebrezze, 7 Cir., 317 F.2d 819; Carqueville v. Flemming, 7 Cir., 263 F.2d 875; Rosewall v. Folsom, 7 Cir., 239 F.2d 724. As the court said in the Degner case, "We may review the record only to determine whether it contained substantial evidence to support the Secretary's decision." 317 F.2d at 821.

The same finality attaches to inferences drawn by the trial examiner

from the evidence if a substantial basis for such inferences appears in the record as a whole. Carqueville v. Flemming, supra; United States v. LaLone, 9 Cir., 152 F.2d 43, 44.

■ Upon the whole record, it is my conclusion that substantial evidence does support the decision of the hearing examiner.

Plaintiff was 50 years of age when he filed his application for disability benefits on November 12, 1958. He had completed six years of elementary schooling. He was employed by Caterpillar Tractor Company from 1936 until May, 1956, with the exception of a brief period in 1942 and 1943 when he served in the armed forces of the United States. In the course of his employment, plaintiff had, from time to time, performed a number of duties, including work in skilled classifications. His most recent assignment had been the operation of a hand truck in the salvage department. He claims that he left that employment in May, 1956, because of incapacitating illness and that he has continuously remained disabled for any work.

The medical evidence indicates that plaintiff had major surgery in 1951 when his gallbladder and spleen were removed. In 1952 a right direct hernia was surgically repaired, the right testicle was removed and an abdominal abscess, not identified as being related to either the major surgery of 1951 or the hernia, was treated. In 1953, plaintiff was hospitalized for treatment of infected sutures in an abdominal incision, and the sutures were removed. Plaintiff was also examined at a Veterans Administration Hospital in 1953, and treated during a four-days residence at the hospital. Examination at that time disclosed chronic rhinitis, associated with the absence of the nasal septum and moderate postnasal drip, multiple abdominal scarring, absence of the right testicle and arrested pulmonary tuberculosis.[1] During 1955,

plaintiff developed hemorrhoids which were sutured. Later in the same year he was hospitalized for the surgical repair of a left indirect inguinal hernia. In May, 1956, plaintiff had surgery for repair of a ventral hernia and lysis, or freeing of adhesions. In January, 1957, he was hospitalized and treated for mucous colitis.

Plaintiff was treated as an out-patient at the Illinois Research and Education Hospital at Chicago from March to August, 1957. His chief complaint at that time, as noted by the hospital records, was epigastric pain. He was found to be suffering from a stomach ulcer which responded to treatment at the hospital and was shown to be healed by an examination made on July 26, 1957. The examination at that hospital revealed that plaintiff was a well-developed, well-nourished man in no acute distress. The findings upon all other examinations made of the plaintiff at that time were essentially normal.

. A thorough examination of plaintiff was made by the Veterans Administration on July 23, 1957, which resulted in a diagnosis of enlarged septal perforations, chronic rhinitis, sinusitis and mild defective hearing. The diagnosis further revealed minimal, inactive pulmonary tuberculosis of Class IV designation, meaning that plaintiff's work tolerance was eight hours per day engaged in normal work activities. Radiographic tests of the stomach and duodenum were negative. In August of 1958, plaintiff was again examined by Veterans Administration doctors, with that work-up including a special psychiatric examination. Clinical findings of the physical examination were similar to those made at the earlier VA examination, and all were essentially negative. Upon the psychiatric examination, plaintiff's memory, judgment, orientation, retention, school and general knowledge were found to be good. No signs of psychosis were revealed. The diagnosis with relation to

---

1. Tuberculosis was apparently diagnosed during, or shortly after, plaintiff's service in the armed forces. His condition responded to treatment and has remained arrested since about 1944.

that examination was anxiety reaction with conversion symptoms.

In October, 1958, plaintiff was admitted to a VA hospital upon his complaints of upper abdominal distress. Again, except that x-rays revealed a gastric ulcer, a complete physical examination was essentially negative. X-rays taken three weeks later showed the ulcer healed. The diagnosis made by the hospital at that time was a gastric ulcer and anxiety reaction, with both reported treated and improved.[2]

Because the surgery, residuals of surgery and the ulcer history did not appear from the clinical reports to impair the plaintiff to such extent that he could not engage in any substantial gainful activity, the Bureau of Old Age and Survivors Insurance obtained a psychiatric examination of plaintiff by Dr. B. C. Ehmke. Dr. Ehmke examined plaintiff on May 27 and June 20, 1960. His report of his first examination reveals his findings that the heart was normal, that the abdomen showed some tenderness and that the neurological examination was essentially negative. His review of the hospital records and clinical reports disclosed no anatomic abnormalities. He reported that plaintiff's expressed feelings of anxiety could not be considered incapacitating, absent the possibility that the same were coupled with epilepsy. He recommended further examination including the taking of an electroencephalogram (EEG) to determine whether there were any epileptic symptoms. An EEG taken at Methodist Hospital in Peoria showed no abnormality. Skull x-rays taken at the same time showed no intracranial involvement, but did show some incidental bone growth in the right front sinus. Dr. Ehmke reported his second interview with the plaintiff and his findings, in part, as follows:

" * * * the second exposure to the patient was quite informative

because he was not as well prepared to meet the questions of the examiner on the second occasion as he must have been on the first occasion. In view of the normal results of our examinations at this time and the fact that his recent hospital records which cover thorough evaluation made of his stomach problems which were also essentially within normal limits, I find that I must revise my original opinion concerning this man. When he was confronted with the normal results of these examinations and interrogated further it became obvious that the patient clutches desperately in the direction of his many complaints and manufactures a multitude of further complaints in an effort to convince me of the serious nature of his dilemma. Then I opened the discussion further in the direction of a return to work and his attitude of willingness to return to work had entirely melted away and he poured forth another barrage of physical complaints.

\*　\*　\*　\*　\*　\*

"It is apparent that the patient is utilizing his many complaints for the secondary gain of obtaining relief from responsibility towards society and toward his family. This is operating either through a rather superficial hysterical mechanism of a definite malingering. The latter would, of course, be very difficult to prove unless the patient openly admitted a design in this direction. At any rate he has himself completely convinced that he is incapacitated for any form of gainful employment. "It is my opinion now that the patient is physically capable of moderate degrees of manual labor. As I mentioned before his intellectual capacity and educational background

2. The report states that on a program of a bland diet and prescribed medication, plaintiff gained about five pounds during his hospitalization and had relatively few gastro-intestinal treatments. It continues, "However, he continues to complain of various mild symptoms which would be considered inconsequential by a less neurotic individual."

limit him to manual forms of work. Although his condition incapacitates him from employment because it destroys his motivation of (sic) his interest in working and supporting and caring for his family rather than incapacitating him in the sense of making him incapable of working, I feel that his psychiatric problem is more extensive in the form of personality disturbances and that his passive dependent orientation has been fixated by his surgical past history."

Although plaintiff claims that he had a surgical resection of a part of the stomach and the bowel, that claim is not borne out by any medical report of record. Dr. D. L. Burhans who performed the surgery on plaintiff makes no mention of either a stomach or bowel resection in his report. The records of Proctor Community Hospital, relating to surgical procedures performed from 1952 through 1955, reveal no stomach or bowel resection. None of the several radiological examinations of the gastro-intestinal tract reported in this record disclose any evidence of such resections. Thus, it appears that the summary of surgical procedures performed upon the plaintiff as above set forth is complete and that the resections claimed were not, as a matter of fact, done.

The balance of the medical evidence of record consists of three letters and one report of Dr. L. H. Favus, a general practitioner, who treated plaintiff beginning on August 24, 1957, after his release by Illinois Research Hospital.[3]

A letter from Dr. Favus, dated May 9, 1958, summarizes plaintiff's history of surgical procedures and hospitalization prior to August, 1957, and notes his complaint of nausea, vomiting and constipation. His letter is concluded with the statement, "I believe his complaints are real and in his present condition he is definitely a poor candidate for work."

A report by Dr. Favus, dated August 29, 1959, shows a diagnosis of plaintiff's condition as partial bowel obstruction, secondary to adhesions, and a healed gastric ulcer. He reported the plaintiff ambulatory and his condition improved.

A letter from Dr. Favus, dated September 10, 1959, contains a summary of surgical procedures and hospitalization which plaintiff had undergone, concluding with the opinion that plaintiff, "because of his past and present history", is not capable of doing any work, and that plaintiff "is very upset mentally" because of all of the surgical procedures which he has had.

The final letter from Dr. Favus is dated October 18, 1960. It purports to show the "present condition" of plaintiff. Again, this letter summarizes the prior history, and shows a diagnosis of plaintiff's condition as a partial intestinal obstruction, secondary to post-operative adhesions. Continuing, the letter states, "For the past year, the patient has been having complaints of severe epigastric distress associated with nausea and vomiting. The attacks occur once or twice weekly and are associated with "extreme constipation. Dr. Favus concludes by saying that the patient has shown little improvement since treatment began, and that plaintiff is totally and permanently disabled and will never be able to work.

It is not our province to weigh the evidence or to resolve the conflicts in the evidence. The decision of the hearing examiner is supported by the exhaustive clinical reports of record, including the results of thorough radiological examinations of the gastro-intestinal tract. Such reports show an interesting medical history and a tendency to ulceration, but no medically determinable incapacitating

---

3. Plaintiff states that he had an appendectomy in 1940 and a tonsilectomy in 1941. He also states that he was hospitalized as the result of a mine accident in 1927, and twice hospitalized as a result of automobile accidents in 1939 and 1941. No medical reports of either of those periods of hospitalization appear of record, and neither has any apparent relevancy to this disability claim.

residual effects of the several surgical procedures which antedate the critical period of this claim. To be sure, the evidence indicates that plaintiff believes that he is incapacitated and that Dr. Favus is of the opinion that plaintiff is totally and permanently disabled. The hearing examiner was not bound by those opinions which are contradicted by other medical evidence. Jacobson v. Flemming, D.C.S.D.N.Y., 186 F.Supp. 936; Wray v. Flemming, D.C.W.D.Ark., 181 F.Supp. 783.

While each case must stand or fall on its own peculiar facts, I note the similarity of plaintiff's claim of physical impairment to that made in several other cases wherein benefits were denied. McCleary v. Flemming, D.C.S.D.Ill., 186 F.Supp. 607; Dotson v. Flemming, D.C.W.D.Ky., 192 F.Supp. 621; Roberts v. Flemming, D.C.D.Ala., 186 F.Supp. 426.

█ Plaintiff is not aided by the emotional problem diagnosed by the VA doctor and by Dr. Ehmke. His condition is not a disabling psychiatric condition within the description of such a disability contained in the regulations, 20 C.F.R. 404.1502, to-wit, "Mental disease (e. g., psychosis or severe psychoneurosis) requiring continued institutionalization or constant supervision of the affected individual." The evidence discloses no loss of orientation, memory or reasoning ability. The need for constant supervision is negatived by plaintiff's own testimony. The condition diagnosed was simply evidence to be considered by the hearing examiner with all other evidence of record. Butler v. Folsom, D.C.W.D.Ark., 167 F.Supp. 684. Of course, the fact that plaintiff may have convinced himself that he can engage in no substantial gainful activity does not, per se, show statutory disability.

█ It appears from the record that plaintiff was, at the time of the hearing before the hearing examiner, receiving a disability pension from the Veterans Administration, a second pension from Caterpillar's insurer, and, yet, a third disability benefit under a policy of insurance issued by Metropolitan Life Insurance Company. The court dealt with this situation in Stoliaroff v. Ribicoff, D.C.N.D.N.Y., 198 F.Supp. 587, 590, saying:

"At first blush these determinations [of disability] would seem to be unmatchable and most compelling evidence of disability, but reflection and logic teach that the definition of disability to be met is the one contained in the federal Act and the regulations. The law is settled that such outside determinations are not binding upon the government agency, and the Referee need only consider them with all the other evidence. Johnson v. Flemming, D.C. Or., 188 F.Supp., 447, 449, 450; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 287."

That was done in this case.

Reliance by plaintiff is placed upon several cases which are deemed inapposite. Little v. Celebrezze, 7 Cir., 310 F.2d 636, involved an administrative record in which all of the medical evidence tended to prove statutory disability. In Teeter v. Flemming, 7 Cir., 270 F.2d 871, medical evidence of statutory disability was not controverted by substantial evidence. Hall v. Celebrezze, 6 Cir., 314 F.2d 686, involved a situation in which the testimony of plaintiff's medical witnesses was confirmed by the doctor who examined the plaintiff on the request of the Secretary. Page v. Celebrezze, 5 Cir., 311 F.2d 757, involved a plaintiff suffering from cervical arthritis and rheumatoid arthritis of the fingers of both hands. No witness testified that Page could obtain substantial gainful employment and testimony to the contrary was not controverted.

Upon this record there is substantial evidentiary support for the hearing examiner's decision that plaintiff is not entitled to the establishment of a period of disability and not entitled to disability benefits for which he applied.

Judgment is ordered dismissing the complaint and affirming the decision of the Secretary. Plaintiff's cross-motion for summary judgment is denied.