**Jessie A. WELLS, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary, Health, Education & Welfare, Respondent.**

**Civ. A. No. 68–C–4–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 6, 1969.

James R. Moore, Abingdon, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Jessie A. Wells brings this action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to obtain review of a final decision of the Secretary of Health, Education and Welfare which held that the claimant was not entitled to disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C.A. §§ 416(i) and 423. The question here is whether the decision of the Secretary that the claimant was not disabled within the meaning of the Act prior to June 30, 1968, the date the claimant's insured status under the Act expired, is supported by substantial evidence. Upon a review of the entire record, it appears that substantial evidence exists to support the decision of the Secretary.

The claimant, born December 18, 1923, has lived most of his forty-six years in the mountains of southwest Virginia. He is married with two children, one of whom is still a dependent. After completing the seventh grade, Mr. Wells began working in the coal mines at the age of fourteen and, except for three years in the Army during World War II, has worked as a coal miner from that time until January, 1966.

In 1962 Mr. Wells injured his back, pelvis and collarbone in a mine accident, and since that time has been unable to perform the heavy manual labor which his previous jobs in the mines required. Because of his injury Mr. Wells was given a job as a mine foreman during 1965. Although the foreman's job was relatively light work for a coal miner, it still required crawling through deep mines measuring approximately three feet in height. This work apparently proved to be too much for Mr. Wells, and he was transferred to a job as cutting machine operator in January, 1966. After a few days of this work, which required lifting heavy objects, Mr. Wells found he was unable to continue. He has not worked since.

The medical reports on the claimant's condition are in substantial accord, and they reveal several ailments. A report dated May, 1966, found residual effects of an injury to the lower back, chronic lumbosacral strain, possible disc injury of the L5, S1 and L4, L5 interspaces, sciatica, and "enough pain to keep him from doing any prolonged or heavy manual labor." The previous fracture of the left clavicle causes some limitation of the left arm and painful use of the left shoulder. Post traumatic arthritis was found in the shoulder and clavicular region. The previous fracture of the pelvis causes aching pains in the lower back. The report mentioned a history of angina pectoris and "possible coronary artery disease with hypertensive arteriosclerotic cardiovascular disease * * * with moderate limitation of full function at this time although he may recover from this attack given a longer period of time. * * * "

A consultative internist who examined the claimant in September, 1966, found frequent premature ventricular contractions, but no heart murmurs or enlargement. The diagnosis was "arteriosclerotic heart disease with coronary insufficiency." The same physician's impressions after a January, 1967, examination were:

It appears the patient's pain is typical of angina pectoris. In regard to the electrocardiogram that we did in September, I would have to admit the findings were minor and the diagnosis of coronary insufficiency is certainly questionable. It is very hard to determine the amount of activity that causes pain and dispnea in this individual in that apparently he leads a very inactive life and has done so for some time. It appears that he is determined not to attempt any type of exertion, activity or work. In my opinion, I feel that this patient is able to engage in some type of activity safely, provided the activities are not too strenuous, or require considerable walking, climbing, or lifting. He could certainly be trained for seden-

tary work without danger to his health. On the other hand, I think it is going to be very hard to convince this patient that he is able to engage in any type of work.

An orthopedic examination in April, 1967, disclosed tenderness near the lumbosacral joint. There was modest guarding by the patient of the lumbar spine motion, with the patient allowing 70% of normal motion in all directions. There was no demonstrable weakness of the lower extremities, and circulation was intact. Straight leg raising was painful at 60 degrees on the left and 40 degrees on the right. It appeared that the patient still had mild residuals of a right lower lumbar disc lesion and that "this condition would disable him for any work requiring multiple episodes of bending or picking up weights of any consequence."

The decision of the hearing examiner, which ultimately became the final decision of the Secretary, does not dispute the medical finding as to the nature of the claimant's ailments, nor does it question the medical opinions regarding the claimant's inability to perform strenuous activities, or those which require considerable walking, climbing, lifting or handling of weights of any consequence. Rather, the hearing examiner found that:

(1) The claimant is capable of working as a mine foreman if his state license is still effective or if he could pass the newer test.

(2) The claimant is capable of satisfactory performance of light to moderate jobs in existence within his reasonable work area and within his physical and mental abilities.

The finding that the claimant could perform the duties of a mine foreman is apparently based on the belief that it involves little or no physical work. This is clearly not how the claimant described his former work—"there wasn't no hard straining work, but you had to crawl all day long on your knees from one place to another" in the mines in order to keep track of the coal that was loaded, to check for gas in the mine, and to see that the timbers are properly set. Furthermore, Mr. Wells stated that under the new federal standards his "second class mine papers" no longer qualified him for the job of foreman, and that he had taken the stiffer qualification test but failed to pass due to his limited education. This testimony of the claimant is uncontradicted, and the conclusion is inescapable that the claimant is incapable of performing or qualifying for any of his former coal mining jobs.

■ Prior to the 1968 amendments to the definition of "disability" [1] several

---

1. As defined in the Social Security Act, the term "disability" means—
 * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.
 * * * * *
 * * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
 * * * * *
For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

decisions in the Fourth Circuit have held that where a claimant is found to be incapable of performing the only type of work he has ever done, the burden is on the Secretary to show that other types of work suited to the claimant's residual capabilities are actually available in the area of the claimant's residence. See, e. g., Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967); Cooke v. Celebrezze, 365 F.2d 425 (4th Cir. 1966); Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966). As intended, the 1968 amendments to the definition of "disability" overruled this line of decisions so that the Secretary is no longer required to prove that the available occupations exist within the area of the claimant's residence. See 2 U.S.Code Cong. & Ad. News, 90th Cong., 1st Sess. pp. 2880–83 (1967); Davis v. Gardner, 395 F.2d 681 (6th Cir. 1968). With this fact in mind we note that the second finding of the hearing examiner—that the claimant is capable of performing other light work— is based on the testimony of a vocational expert present at the hearing. The gist of the expert's testimony is that several industries within a fifty-mile radius of the claimant's residence employ persons whose education, training, and physical impairments are similar to those of the claimant. The jobs cited included thimble machine operator, bottle washer, capping or sealing machine operator, filling or packaging machine operator, carton inspector, bakers helper, cake packer, and bread or bun bagger. While some of these jobs were described as being sedentary, others would require standing. There is no reason to doubt that these suggested jobs exist "in the national economy" as the Act requires. The question is whether the claimant is capable of such work, notwithstanding his aches and pains.

 The objective medical findings lend credence to the complaints of Mr.

Wells, and the subjective evidence of the pain experienced by the claimant is a factor which cannot be ignored in evaluating his ability to engage in gainful work. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). The clinical and diagnostic findings in this case could be consistent with degrees of pain ranging from the unremitting and incapacitating to the infrequent and mild, depending on characteristics of the claimant incapable of objective measurement. In assessing the effect of pain on a claimant's ability to work, the Secretary or a court reviewing his decision, should neither disregard nor rely solely on the claimant's protestations of pain. However, the record in this case obviates either of these alternatives. We note first that the physician who treated the claimant's heart condition recommended mild exercise, and accordingly, the claimant walks one or two miles each day. Also, the physician who described in some detail the claimant's experiences of pain gave the opinion that the claimant could perform light work. None of the medical reports indicate the contrary. Of some significance is the fact that the claimant was able to work for a year as a mine foreman after recovering from his 1962 injuries. A memorandum in the record discloses that in December, 1966, the claimant was asked to undergo tests for evaluating his potentiality for employment, but he declined. The reason he gave was not that he was incapacitated by pain, but that his doctor told him to take it easy and not do any strenuous labor. Finally, the claimant's own testimony does not convincingly negate his ability to do light, sedentary work. Where pain is the critical issue in determining disability, we would require more persuasive evidence of its disabling effect. Cf. Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964).

medically acceptable clinical and laboratory diagnostic techniques.
42 U.S.C.A. § 423(d) (1), (2), (A) and (3), as amended (Cum.Supp.1969).

This amended definition applied to court decisions which have not become final before January, 1968. Pub.L.No. 90–248, § 158(e), 81 Stat. 821.

**280**

Accordingly, the decision of the Secretary of Health, Education and Welfare is hereby affirmed.

The clerk of this court is directed to send copies of this opinion and judgment to the claimant and to the respondent.