**Kyle FLANARY, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–38–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 21, 1969.

Glen M. Williams, Jonesville, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

### OPINION AND JUDGMENT

DALTON, Chief Judge.

The claimant, Kyle Flanary, filed an application on March 31, 1966, for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i) and 423, as amended, (Cum.Supp.1969). He alleged that he has been disabled since 1957 due to a hernia, a spastic colon, a bad back, and a broken hip and right leg. After a full hearing his claim was denied by the hearing examiner, whose decision was affirmed by a written opinion of the Appeals Council of the Social Security Administration. His administrative remedies being exhausted, the claimant now seeks judicial review of the final decision of the Secretary of Health, Education and Welfare under section 205(g) of the Act, 42 U.S.C.A. § 405(g).

The decision of the Secretary held that the claimant was not under a

**740**

"disability" [1] at any time during the period 1957 to February, 1968, the date of the final decision of the Secretary. The question before this court is whether the decision of the Secretary is supported by substantial evidence. This court is of the opinion that the decision of the Secretary finds substantial support in the evidence, which may be summarized as follows.

Mr. Flanary, born in 1911, grew up on a farm, where he performed the usual chores until the age of twenty. He quit school at the age of sixteen after completing the sixth grade, and he says that he still has difficulty reading and writing. His first work experience other than on the family farm was driving a pickup and delivery truck for a laundry. After a year of this work he became a pick-and-shovel man for the State Highway Department for a similar length of time. He then worked several years for a coal company, performing just about all of the jobs to be found in a mechanized mine. In 1936 he went to work for another coal and coke company, where, over a twenty year period, he operated a number of machines and eventually worked on the maintenance force. Around 1954 he injured his back while working, and thereafter did only light maintenance work until 1957.

In 1957 Mr. Flanary, in partnership with his son, invested in a filling station in Kingsport, Tennessee. The claimant testified that between 1957 and 1965 he did very little work at the gas station, which was managed by his son. However, it is clear that he spent a good part of his time at the station, perhaps for lack of anything better to do. He admits that between 1960 and 1965 he spent at least half of each day at the station making himself useful when needed. He could and did wait on customers by pumping gas, checking the oil, and making sales, and he often went to the bank to make deposits or get change. For these services he received compensation roughly comparable to that paid service station attendants generally.

In October, 1965, Mr. Flanary suffered a broken leg and was in a cast for about two months. After the cast was removed he was able to walk around with the aid of one crutch, and he walked with a cane for at least a year following the accident. Since this accident he has done no work of any consequence at the filling station, but has spent most of his time watching television or listening to his two-way radio. His chief somatic complaints at this time are pains in his back, apparently resulting from his 1954 injury, and pains in his hip and right leg due to his 1965 accident. His only medication, prescribed by his doctor, are pain pills which he takes every four hours as needed.

The medical reports of the claimant's condition date back to 1957, when most

---

1. As defined in the Social Security Act, the term "disability" means—

  \* \* \* inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months \* \* \*.

  \*   \*   \*   \*   \*

  \* \* \* an individual \* \* \* shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

  42 U.S.C.A. § 423(d) (1) and (2) (A), as amended (Cum.Supp.1969).

  This amended definition applies to court decisions which have not become final before January, 1968. Pub.L. No. 90–248, § 158(e), 81 Stat. 821.

of the claimant's ailments were of a gastro-intestinal origin. During that year Mr. Flanary visited his doctor about once a month complaining, at various times, of passing blood in his stools, swelling, cramping and soreness in his abdomen, diarrhea, nausea, and pain in his back. A physical examination in February, 1957, revealed no abnormalities. In the course of his subsequent treatment he was given numerous medications for his various symptoms, with little or no success. He was hospitalized for a brief period in 1957 where a diagnosis revealed a hyperirritable bowel syndrome, a spastic colon, diverticulosis, varicocele of the left scrotum, chronic anxiety, thickening of gastric mucosa in proximal third of the stomach, and a small indirect inguinal hernia on the right. An x-ray of the claimant's spine showed a marked narrowing of the fifth lumbar interspace. Quite similar diagnoses were made by the claimant's personal physician and two other doctors who treated the claimant during 1958. The reports of these findings were not accompanied by any explanatory remarks, except that two of these physicians, in September, 1958, opined that the claimant was "totally and permanently disabled."

In spite of this impressive list of ailments the claimant's condition apparently improved after 1958. The next medical report in the record is dated more than seven years later and concerns the claimant's ten-day hospitalization in October, 1965, for his broken leg. This report states that the claimant was admitted for a fracture of the right femur; treatment consisted of manipulation and reduction with insertion of Steinman's pin; a cast was applied; his postoperative course was good; he had good position of the fragments and cast prior to discharge; he sustained no complication; and he was discharged in the cast. The cast was removed in December, 1965, and subsequent x-rays showed good healing. An April, 1966, examination revealed that his right leg was one-half inch shorter than his left,

that he was walking with a crutch, and that he was gradually getting more and more motion in the knee and hip.

The claimant's physician also examined him in April, 1966, and reported a herniated disc at L–5, (probably) a torn meniscus at the right knee, chronic colitis, a fracture of the femur with residual deformity, and a probable soft tissue injury around the acetabulum.

A follow-up report dated December, 1966, by one of the doctors who treated the claimant's broken leg states that the claimant was still walking with a cane and was complaining of increasing pain in his back and right leg. Examination revealed a three-fourths inch shortening of the right leg, approximately ninety percent of normal motion in the right hip, slight pain in the hip and right knee, a half-inch atrophy of the right thigh and calf, somewhat limited forward and backward bending of his back, and no impairment of the reflexes. The report concludes, "It is my impression that this man at this time is not completely disabled."

The final medical report in the record is the result of a consultative orthopedic examination done in December, 1966. This examination found that the pelvis was depressed on the right side and that there was a mild scoliosis in the lumbar segments. There was a good range of flexion of the lumbar spine, but extension was limited to practically no motion. His lateral bending was somewhat hampered. The right leg was about one inch shorter than the left. The patient had a good range of motion in the left hip but a twenty degree flexion contracture in the right hip with limited motion. Hip rotation was not associated with any significant pain. Reflexes in the legs were present and equal, and there was no motor weakness or sensory impairment. X-rays of the lumbar spine revealed no significant arthritic changes and no evidence of destructive bone disease. No herniated disc was detected. The fracture of the right femur had healed solidly, but in malposition,

with some loss of motion in the hip and postural back strain probably due to flexion contracture in the hip. The report concludes, "This patient orthopedically would not be considered disabled. * * * He certainly could do lighter work if such a job were available for him."

At the hearing Mr. Flanary complained of his inability to find a job which he could perform, although he admitted that he had not looked for any employment. A vocational expert was present at the hearing and testified that, in his opinion, the claimant was capable of performing several jobs available both in the national economy and close to the claimant's home. Examples of such jobs included custodial work, stenciling, wrapping and shipping, and deburring work. Inquiries at a local manufacturing company disclosed that it was sympathetic in its hiring practices to handicapped persons, and that several disabled individuals worked there. In reply to this testimony the claimant said he would be glad to work again it he could find a job which was not too demanding.

■ The foregoing evidence did not persuade either the hearing examiner or the Appeals Council that the claimant had been unable to engage in substantial gainful activity for a period of twelve or more months since 1957. The four medical reports in the record concerning the claimant's gastrointestinal disorders during 1957 and 1958 do not elaborate on their diagnoses. They contain no detailed clinical findings or descriptions of the extent or severity of the claimant's various impairments. Except for a brief hospitalization in 1957, it does not appear that the claimant's activities or functions were significantly restricted during this period. The conclusions of two of the doctors that the claimant was totally and permanently disabled, while entitled to some consideration, are not binding on the Secretary. See Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.

1962). In view of the scanty evidence to support these opinions and the differing opinions of other experts, the Secretary was justified in disregarding them. Apparently the claimant himself was not convinced of his incapacity, since he spent most of the ensuing eight years working at the filling station. Although his duties at the filling station required neither strength nor endurance, it is clear that he was capable of providing customers with routine service. His short work days seem to have resulted more from choice than from necessity.

The claimant's broken leg, which disabled him for several months in 1965 and 1966, healed without complications and with only moderate loss of motion. The evidence does not show that the claimant's back and leg pains, which are his major complaints at this time, are severe or incapacitating. A thorough orthopedic examination in 1966 produced the opinion that the claimant is capable of light work, an opinion which seems consistent with the non-medical evidence regarding the claimant's activities and residual capabilities. The testimony of the vocational expert that light work is actually available in the area of the claimant's residence, while not essential to this decision, further convinces us that the claimant's unemployment for the past several years is attributable to his belief that light work was not available rather than to the belief that he is incapable of any work.

■■ In short, the evidence does not satisfy the claimant's burden of proof. Considering the record as a whole, it is reasonable to conclude, as did the Secretary, that the claimant neither was nor is under a disability as defined by the Act. This conclusion is reinforced by the fact that a decision of the Secretary, in order to avoid reversal by a court, only need be supported by substantial evidence, which is something less than a preponderance. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). At the least, it may be said that the decision of the

Secretary is supported by substantial evidence.

Consequently, the defendant's motion for summary judgment affirming the decision of the Secretary of Health, Education and Welfare, is hereby granted.