**Peggy Ann CLARK, Plaintiff,**

**v.**

**Robert H. FINCH, Secretary of Health, Education & Welfare (now Elliott Richardson), Defendant.**

**Civ. A. No. 69-C-42-A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Oct. 20, 1970.

Robert T. Winston, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

WIDENER, District Judge.

Claimant, Peggy Ann Clark, brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405 (g), for review of the final decision of the Secretary denying her disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, as amended. Claimant has filed two applications for disability insurance benefits, the first being August 3, 1965, alleging a back injury which occurred May 21, 1964. That application was denied and became the final decision of the Secretary on May 31, 1967, when the Appeals Council denied her request for review. No further action was taken by claimant. Claimant filed her second application for disability insurance benefits on March 4, 1968, alleging disability arising from spinal osteoarthritis and from the same back injury. The second application was denied in a written opinion dated February 20, 1969, and became the final decision of the Secretary on March 24, 1969, when the Appeals Council denied her request for review. Having exhausted all of her administrative remedies, claimant filed her complaint in this court on April 2, 1969, seeking judicial review of the Secretary's decision. Both parties have filed motions for summary judgment and submitted written memoranda in support thereof.

Claimant is a resident of Keokee, Lee County, Virginia. She was born April 10, 1928, and received an eighth grade education. On May 21, 1964, the date of the injury giving rise to the instant action, claimant was employed by Burris Processing Company in Milford, Delaware, as a chicken eviscerator. On that day, as claimant was stepping from a stool to the floor to go to lunch, she received a severe pain in her back and now alleges that as a result of that accident she has not been able to work. Shortly after the accident, claimant was hospitalized for ten days, and on July 7, 1964, she underwent a spinal fusion of the L-4 through L-6 vertebrae. Claimant testified at the hearing on her sec-

ond application that she was unable to sit, stand, lie down, or walk for any extended period of time; that she has constant low back pain which extends for intermittent periods into the back of her legs; that she cannot do any heavy lifting, and that she does not rest well at night. She also stated that she does only very light housekeeping chores, such as cooking, dishwashing, and the laundry.

Claimant received a workmen's compensation award for the injury to her back, and she testified that Burris Processing would not rehire her, nor could she secure employment from a luggage manufacturing company to which she applied after the first hearing.

At the time of the first hearing, claimant's nephew, his wife and six children resided with claimant at Fredrica, Delaware, and the nephew, at that hearing, corroborated claimant's testimony. Claimant and her husband were separated at that time.

At the second hearing, claimant's husband appeared and testified. His testimony was that he did most of the heavier housework, that his wife has dizzy spells, and that occasionally he has had to help her get out of the bed and out of the bathtub.

Claimant's earnings certification discloses that she was employed during the years from 1955–1964, and her husband stated at the hearing that she worked regularly prior to her accident in May, 1964. The record shows that claimant has had work experience including sales clerk, assembly line work trimming rubber molding from car doors, nurse's aide, assembly line work handling starters for washing machine motors, perlock machine operator at a textile mill, as well as chicken evisceration.

The medical evidence consists of numerous reports which are filed in the record.

The earliest medical evidence in the record is a report by Dr. Hunter M. Addis, dated February 22, 1962, prior to claimant's accident at Burris Processing Company, showing that plaintiff complained of pain in her lower back.

The report most favorable to claimant was an examination dated May 6, 1967, by Dr. J. S. Henry, claimant's treating physician. The diagnoses in that report were: (1) severe osteoarthritis with spinal post-fusion syndrome; (2) A.S.H.D., moderate; (3) varicose veins, severe, bilaterally; (4) urinary stress incontinence, severe; (5) obesity, exogenous; (6) pain rt. knee, cause undet.

■ Subsequent to her accident on May 21, 1964, claimant was treated by Dr. Walter L. Bailey, who performed the spinal fusion on July 7, 1965. In a letter dated February 8, 1965, Dr. Bailey recommended waiting one year after the spinal fusion before attempting to evaluate claimant's final disability. At that time, it was Dr. Bailey's opinion that her disability was about 35%. In a second letter dated September 27, 1965, more than one year after the spinal fusion, Dr. Bailey stated that "[p]hysical examination revealed marked restriction of lumbosacral motion in all directions and examination of both lower extremities were within normal limits. With the amount of restriction of lumbosacral motion and the evidenced discomfort accompanying same, it would be my opinion that in all probability she is not employable at the present level of her job training." Dr. Bailey's conclusion of the ultimate fact in issue, that is, whether claimant was under a disability, was properly considered by the hearing examiner.

Examinations of claimant were made by four different Board certified specialists. A neurological examination on April 4, 1966 by Dr. Charles L. Reese, III, was normal outside a questionable straight leg raising test. Dr. Reese arranged for claimant to have a myelogram. Myelogram studies by Dr. R. E. Price, Jr., performed on May 9, 1966, disclosed results which were not remarkable other than slight disc space narrowing at L–5, 5–1.

The admitting diagnosis at Wilmington Medical Center, where claimant underwent the myelogram studies was "possible lumbar disc", and the discharge diagnosis was "chronic low back strain." In a letter dated July 12, 1966, Dr. Reese restated his conclusion that claimant suffered from chronic low back strain but had no neurological involvement.

On March 28, 1967, Dr. Rober T. Strang, a Board certified orthopedic surgeon, reported as follows:

"Examination today reveals an obese middle-aged white female, who is about 50 lbs. overweight. She states that this is about the same weight she was when she was first injured. She complains of pain in her back and states that her leg pain is a good deal better. Examination of her back reveals that she has approximately 50% of motion in her lower back. There are well-healed incisions over the mid-lumbar spine and over her left pelvic area, the site of the bone graft. Straight leg raising on the left side continues to cause some discomfort in her back. Straight leg raising on the right side is normal. Sitting straight leg raising is normal. Her reflexes, knee jerks are both equal and active. Both ankle jerks are diminished. She has one-half inch atrophy of the left calf as compared to the right."

Dr. Loyal K. Wilson, another Board certified orthopedic surgeon, examined claimant on April 1, 1968 and diagnosed her condition as chronic low back strain with the possibility of herniation of nucleous pulposus, residual symptoms manifested by mild leg pain.

The report by a fourth Board certified specialist, Dr. J. G. McFaddin, states:

"Mrs. Clark has, in my opinion, an excellent arthrodesis of the lower lumbar spine. She has residual impairment of motion in this area, as would be anticipated following surgical stabilization. She does have evidence of some irritation in the lumbar region, however. She has no evidence of disuse of the lower extremeties. There is no wasting or atrophy. Reflexes, except for the questionable impairment in the left knee reflex, are entirely within normal limits, as are her other neurological findings.

"I see no reason for limitation in ambulation, standing, sitting, or kneeling. She is able to climb stairs. She is able to ride a public conveyance. She can [from a medical standpoint] drive a car.

"Mrs. Clark does not appear to be in need of orthopedic care at this time."

The neurological examination report made by Dr. James B. Nichols, Jr., at the request of Dr. Henry, claimant's treating physician, is not favorable to claimant's position. Dr. Nichols stated, "I see no indication for Neurological intervention at this time. She was given a booklet on back care and encouraged to lose weight."

The fact that claimant failed to lose any weight, despite medical advice to do so, does not strengthen her cause. There is no evidence in the record tending to show that her weight problem is other than remedial, and the added stress and strain on her musculo-skeletal system cannot have done other than enhance her grievances.

 Claimant alleges that she has been unable to work since the occurrence of her back injury on May 21, 1964. Section 216(i) of the Social Security Act, 42 U.S.C. § 416(i), imposes upon the claimant the burden of proving that she is under a disability. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). But the claimant need not carry the burden to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); see Statzer v. Cohen, 297 F.Supp. 874 (W.D.Va.1969). It is well settled that claimant does not have to be hospitalized or bedridden to be under a disability. Odom v. Celebrezze, 230 F.Supp. 732 (E.D.S.C.1964). However, the mere showing by claimant of the presence of a disease or medically determinable impairment does not in and of itself create a disability, unless claim-

ant shows that the disease or impairment causes functional limitations which preclude her from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962).

The uncontradicted objective medical evidence discloses that claimant's main impairment is her lower back which is restricted in movement to some degree. Although other impairments were listed by claimant's treating physician, these diagnoses were not supported by the record.

 Claimant testified that she had constant pain in her back. It is true that relatively constant, severe pain may give rise to a disability. Boggs v. Cohen, 298 F.Supp. 175 (W.D.Va.1969). And subjective evidence of claimant's pain cannot be ignored in evaluating her ability to engage in substantial gainful activity. Wells v. Cohen, 296 F.Supp. 276 (W.D.Va.1969). Subjective symptoms of pain must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965) (on facts similar to those of instant case); see also Flanary v. Cohen, 297 F.Supp. 739 (W.D.Va.1969). There is, however, no evidence in the record to show that claimant's pain was of such severe or constant nature as to be disabling in and of itself. In fact, claimant testified at the hearing that she was not in pain at that time, that she took no medication except Anacin, and that she was not wearing the back brace which had been prescribed for her by a physician. The hearing examiner considered the objective medical evidence, as well as the subjective complaints of pain in accordance with the guidelines set out in Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and his findings and reasonable inferences therefrom are conclusive if supported by substantial evidence. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962).

There were present at both hearings vocational experts who testified to the availability of light and sedentary jobs which, considering claimant's age, background, work experience, and physical and mental capacity, they felt she could perform. One of the experts conceded, however, that employers were wary of hiring persons with previous back injuries involving workmen's compensation and related insurance claims. Under the 1968 Amendment to 42 U.S.C. § 423, whether a job vacancy exists or whether plaintiff would be hired if she applied is immaterial. While both experts expressed the view that claimant would have difficulty in securing employment in large industries, there were numerous small places where she could find work. From the testimony and other evidence, including that adduced in the hearing on the first application, the hearing examiner determined that claimant was not unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which could be expected to last for a continuous period of not less than twelve months or result in death.

 Upon review of the record in this case, the court finds that the decision of the Secretary is supported by substantial evidence. Accordingly, an order is this day entered granting defendant's motion for summary judgment and denying claimant's motion for summary judgment.