**Clinton B. BRITTON, Plaintiff,**

*v.*

**Elliott L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 70-C-138-A.**

United States District Court, W. D. Virginia, Abingdon Division.

Aug. 30, 1971.

Robert T. Winston, Jr., Norton, Va., for plaintiff.

James G. Welsh, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

Clinton B. Britton, the claimant, brings this action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review in part a final decision of the Secretary of Health, Education and Welfare. The decision holds that the claimant was entitled to a closed period of disability beginning on October 2, 1968, and ending January 5, 1970, and to disability insurance benefits commencing with the month of May 1969 and ending March 1, 1970. The decision, rendered by the hearing examiner on July 28, 1970, became the final decision of the Secretary when the Appeals Council denied the claimant's request for review on November 10, 1970.

The sole issue in this proceeding is whether the Secretary's determination that Mr. Britton ceased to be under a disability as defined by the Act from after January 5, 1970, is supported by substantial evidence. If this court finds such substantial evidence, our inquiry must cease, and the Secretary's decision will be conclusive. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962).

The pertinent facts are these. Mr. Britton was born March 10, 1925. He resides in Camp Creek, near Clintwood, Virginia, with his wife and seven minor children, all of whom are dependent upon him for support. The claimant possesses a seventh grade education, and has had no special vocational training. His principal work experience has been in the coal mines, loading coal and repairing cars. He also worked as a sew-

ing machine mechanic for a clothing company from 1959 to 1966. He returned to the mines in 1966 and, prior to a back injury sustained in a mining accident in April 1967, worked *inside* the mines. Thereafter he was placed in the shop where he gained some experience in arc welding. He has not worked since October 1968 when he suffered pneumonia and his doctor would not release him to work.

On October 30, 1968, the claimant filed his application to establish a period of disability under section 216(i) of the Social Security Act, 42 U.S.C.A. § 416(i), and for disability insurance benefits under section 223 of the Act, 42 U.S.C.A. § 423, alleging the onset date of disability as October 2, 1968. His principal complaint was emphysema, described clinically and determined by the State Agency as (1) obstructive emphysema; (2) pulmonary fibrosis, due to unknown cause; (3) probable arteriosclerotic heart disease; and (4) duodenal ulcer. The application was denied and the claimant was so notified by letter dated May 16, 1969. Upon reconsideration the application was denied and the claimant was so advised by letter dated August 29, 1969. Pursuant to his timely request, a hearing was duly held in Norton, Virginia, on April 21, 1970. Mr. Britton, represented by an attorney, appeared and testified at this hearing, as did Mary Britton, claimant's wife, and Logan Childers, a friend and neighbor. Various medical reports were introduced into evidence. On July 28, 1970, the hearing examiner held that in light of the entire evidence of record Mr. Britton was entitled to the establishment of a period of disability commencing October 2, 1968, and ending January 5, 1970, and to disability insurance benefits beginning after the usual waiting period and ending March 1, 1970; moreover the examiner held that the claimant's impairments did not prevent him from engaging in substantial gainful activity from and after January 5, 1970. Because the claimant meets the special earnings requirement at least

through September 30, 1973, the decision is necessarily limited to the date it was rendered as to a finding of disability or non-disability.

The medical evidence is voluminous. Claimant was admitted to Park Avenue Hospital at Norton, Virginia, on October 3, 1968, for vigorous medical treatment, and was discharged October 12, with a final diagnosis of bronchopneumonia and an active duodenal ulcer for which he continued to receive treatment after discharge. Dr. H. H. Howze, the attending physician and a general surgeon, noted in a report dated October 31, 1968, concerning the hospitalization, that the claimant on admission had complained of aches, chest pains, high fever, coughing and vomiting. Moreover the claimant's response to treatment for his acute respiratory infection was slow, but the acute pneumonitis did clear up. In a subsequent report dated November 1, Dr. Howze revealed that claimant had chest pains and pains from the ulcer, overall weakness, and that he was receiving post-hospital treatment for bilateral bronchopneumonia. He opined that claimant was unable to work, and made a diagnosis of pulmonary emphysema; active, chronic duodenal ulcer, and hemocirculatory asthenia.

In a supplemental statement filed January 18, 1969, Dr. Howze stated that the claimant had progressive asthenia, depression, and loss of ambition and ability to carry on his work. Claimant moreover has periods of weakness associated with marked tachycardia, a "so-called neurocirculatory asthenia," from which he is unlikely to recover. The doctor further stated that claimant was not able to resume his regular occupation and, because of lack of education or training, he was not suitable for vocational rehabilitation. Lastly, to the previous diagnosis Dr. Howze added an acute depressive reaction.

Pursuant to referral by the Virginia State Agency, the claimant was examined by Dr. M. H. Onder, an internist consultant, on March 3, 1969. His report of the same day noted that Mr.

Britton's primary complaint was "smothering", but that he suffered from various other infirmities. After extensive tests, Dr. Onder recorded his diagnosis:

1. Chronic Obstructive Pulmonary Disease (Pulmonary Emphysema and Chronic Bronchitis)

2. Pulmonary Fibrosis, mild

3. Probable: Arteriosclerotic Heart Disease (Anginal Syndrome); Class: III–B

4. Kypho-Scoliosis of Dorso-lumbar Spine

5. Chronic Peptic Ulcer Disease; no activity at this time

6. Colitis; etiology unknown.

Dr. J. M. Straughan, a radiologist at Wise, Virginia, conducted the x-ray studies for Dr. Onder, which studies confirmed the latter's diagnosis of kyphosis. Previously, at Dr. Howze's request, Dr. Straughan had examined the claimant and indicated that the prior pneumonia had cleared but that the studies revealed fibrosis and emphysema. In a third report, Dr. Straughan's x-ray studies showed slight gastritis with duodenal deformity on the basis of a shallow ulcer crater. The x-ray studies of the lumbosacral spine revealed osteoarthrosis, scoliosis, and slight lordosis.

Blood gas studies performed on April 29, 1969 by Dr. G. L. Hamilton, a consultant in internal medicine, revealed mild deficiency, while electrocardiographic studies, also performed by Dr. Hamilton, were interpreted to be a normal tracing. Pulmonary function studies made by Dr. R. A. Abernathy on August 7, 1969, demonstrated a "fairly definite obstructive component" during the tests.

Dr. Panos G. Gregoriou, a general practitioner who has seen the claimant frequently, reported on July 17, 1969 that the claimant complained of expectorating blood, recurrent back pain and shortness of breath on minimal exertion. After examination on several occasions the doctor recorded the following impressions:

(1) Emphysema, moderately severe.

(2) Active duodenal ulcer with bleeding, by history.

(3) Degeneration of the lumbar spine with osteoarthritis.

"In my opinion he is disabled for the amount of education he has and unemployable."

Subsequent to the oral hearing, a supplemental record from the Park Avenue Hospital, covering claimant's hospitalization from December 17 to 21, 1968, revealed that the claimant had been admitted to the hospital with acute upper respiratory disease, pulmonary emphysema, duodenal ulcer, and anxiety reaction. The report noted a past history of dyspnea, "now acute," and anxiety. The discharge summary revealed that claimant had an acute upper respiratory disease and emphysema, and duodenal ulcer for which he had previously been treated. Also introduced subsequent to the hearing were a series of x-ray studies made at the General Medical Clinic in Clintwood, Virginia, which revealed progressively severe emphysema, internal bleeding, and a possible though not positive indication of tuberculosis, for which the claimant was taking medication.

The most recent medical evidence available to the hearing examiner was a discharge summary made by Dr. William A. Kessler of the Appalachian Regional Hospital, covering claimant's hospitalization there between January 5 and 9, 1970. Dr. Kessler stated, *inter alia*:

Clinical impression was that of pulmonary emphysema with past history of asthma and smoking, chronic bronchitis and past history of duodenal ulcer. * * *

He also had x-rays of the lumbar dorsal spine which showed the old injury at about L–1, D–12 which was stable and rused with some deformity.

Discharge diagnosis:

1. Chronic bronchitis

2. Past history of duodenal ulcer, now healed

3. Essentially normal pulmonary function.

At the hearing Mr. Britton testified that he has had ulcer trouble for four or five years, and that he couldn't work in the mines because of shortness of breath brought on in part by his asthma. He cannot stand for more than 30 minutes, is unable to sit without back pain for longer than 15 to 20 minute intervals, and does no lifting. Due to his breathing problems and constant back pain, he does not sleep well, and at his doctor's suggestion, he tries to lie down for two or three hours daily. At the same time he has bad circulation in his legs and his doctor has advised him to walk as much as he could stand to do so. Rest, medication and occasional injections relieve some of his breathing problems, back pain and stomach pains. He attends to his personal needs but does not drive. Mary Britton, the claimant's wife, testified that he takes 28 prescribed pills and medications daily. Both she and Mr. Childers, commensurate with the degree of their observations, confirmed the claimant's testimony of his pain and discomfort.

The hearing examiner noted in his decision that no medical evidence more recent than Dr. Kessler's report had been entered into the record. He therefore relied heavily on Dr. Kessler's report, finding that the disabling effects of the claimant's impairments had diminished to the extent that he ceased to be under a disability from and after January 5, 1970.

Responding to the examiner's observations, the claimant by his attorney offered more recent evidence to the Appeals Council. Dr. Gregoriou, who had continued to see the claimant, noted in a report dated May 31, 1970, that claimant continued to suffer from and was being treated for severe respiratory ailments and low back syndrome. He further opined that Mr. Britton "is disabled" and noted that the claimant had applied for Social Security benefits. Also offered was the latest in the series of the x-ray studies conducted at the General Medical Clinic at Clintwood at the request of the County Health Department. Dated June 22, 1970, the report noted:

Chest filming showed no change. Chronic obstructive lung disease (bronchitis emphysema). Suspected cor pulmonale. Recommendings: state for how long INH was taken. Re-x-ray in 6 months.

Lastly, offered by claimant's attorney was an affidavit dated August 8, 1970, executed by Mr. Britton indicating that not only had his physical condition not improved since 1969, but that it was getting worse. Despite this additional evidence, the decision of the hearing examiner was affirmed by the Appeals Council.

■ The Secretary's finding that Mr. Britton was disabled from October 2, 1968 to January 5, 1970 was proper. The issue therefore is whether the claimant ceased to be under a disability as defined in the Act after January 5. The claimant has the burden in this proceeding of showing by objective medical evidence that he is precluded from engaging in substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). This burden however need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ The claimant has met his burden. We find here many medical reports substantiating in varying degrees, the respiratory, gastro-intestinal, lumbosacral, and psychiatric impairments of which Mr. Britton complains. Only Dr. Kessler's report can be construed as doubting the severity, but not the existence, of the ailments. If the Secretary's decision had been based solely on the medical evidence available to the hearing examiner, it may properly be argued that the decision denying benefits after January 5 is supported by substantial evidence, not because Dr. Kessler's report conflicted with the earlier reports

but rather because viewed in progression the disabling effects of the impairments had possibly subsided. It seems however that the Appeals Council either ignored or lightly dismissed the uncontradicted medical evidence and affidavit submitted to it for consideration after the decision of the hearing examiner. This subsequent evidence clearly established that the claimant's condition after January 5 had not changed from that before and on which previous condition the hearing examiner had determined that claimant was unable to work. We are aware that medical conclusions are not binding on the Secretary, 20 CFR § 404.1526 (1971), but viewing the evidence as a whole, the emphasis placed upon Dr. Kessler's report is surely misguided. *See* Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The hearing examiner was clearly impressed with claimant's willingness to work and his corresponding lack of ill motivation or malingering. He noted that claimant sought medical opinions primarily to determine his ability to return to work and not to establish disability for social security purposes. The examiner found moreover that claimant's emphysema, which appears to be the claimant's chief complaint, constituted a permanent impairment. Since the evidence established only the possibility of tuberculosis, it is clear that the hearing examiner did not rely on that possibility in reaching his initial determination of disability, and therefore Dr. Kessler's conclusion precluding tuberculosis cannot be accorded much probative value. We reiterate that the hearing examiner's determination that claimant ceased to be disabled under the Act after January 5 was based largely on the absence of medical evidence contradicting Dr. Kessler's report, which was the latest report available to the examiner.

▮ On the other hand, the Appeals Council, and the hearing examiner to an extent, discounted much of the claimant's subjective testimony concerning the nature of his condition, and his

pain and lack of facile movement. That such pain and discomfort may give rise to disability cannot be disputed. Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967). The evidence of record does not refute Mr. Britton's testimony, confirmed by his wife and Mr. Childers, and the Secretary cannot easily dismiss such testimony in evaluating claimant's ability to work. Wells v. Cohen, 296 F. Supp. 276 (W.D.Va.1969). The Secretary's determination of non-disability following his allowance of a closed period of disability in effect finds that claimant can return to any of his prior jobs. This ignores for example Dr. Howze's refusal to release the claimant medically for his return to the mines. It furthermore disregards the claimant's testimony that he could not pass the physical for work in union mines, and that his former employer removed him from his job inside the mines because of his respiratory and back ailments.

▮ We do not think the Secretary's decision is supported by substantial evidence. The physicians who spoke to the issue of disability concluded that Mr. Britton was disabled and unemployable. The claimant's impairments prior to January 5, 1970 which gave rise to the initial determination of disability were found by the most recent evidence either to have remained the same or to have become worse. At most Dr. Kessler's report, which did not speak directly to the issue of disability, can only support an inference that the severity of the ailments fluctuates. This alone cannot support a finding of non-disability, even if the claimant conceivably could perform work sporadically. See 20 CFR § 404.1502(c) (1971). The evidence clearly demonstrates that the claimant continues to be under a disability as defined in the Act.

Accordingly, the decision of the Secretary disallowing Social Security benefits after January 5, 1970, is reversed, and the claimant's motion for summary judgment is hereby granted.