**Arvin E. HAYNER, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 1150.**

United States District Court
S. D. West Virginia,
at Huntington.

March 9, 1963.

Glyn Dial Ellis, Logan, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that defendant's motion for summary judgment should be granted.

On February 21, 1961, plaintiff filed an application to establish a period of disability and for disability insurance benefits. This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On June 21, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability or to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on August 23, 1962.

In order to meet the statutory definition of disability plaintiff had to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which commenced no later than May 1, 1961, for entitlement to disability insurance benefits and no later than May 21, 1961, to establish a period of disability. His special insured status does not expire until June 30, 1965.

In his application plaintiff alleged that he became disabled to work on August 23, 1960, because of a flat hip socket. The evidence of record shows unquestionably that his hip condition had existed since he was a young child—about seven or nine years old. At this early age he had used crutches for approximately six months as a result of his hip condition. His chief complaints were pain and soreness. At the hearing he also complained of a skin disease and a growth in his nose. As to these last two complaints there is absolutely no medical evidence of record.

The record further discloses that plaintiff served in the Army for only seven weeks. He was honorably discharged for medical reasons arising from his hip condition. A medical report made while plaintiff was in the Army, dated December 29, 1941, indicates that X-rays showed a deformity in the left hip characterized by a "flattening of the head of the femur, moderate restriction of motion, shortening of leg, left, and muscular atrophy of thigh, left."

Dr. J. L. Patterson, in a report received on February 23, 1961, indicated that he first examined plaintiff on August 23, 1960, and performed his last examination on February 22, 1961. An X-ray showed a flattening and irregularity of the head of the left femur and changes in the hip bone. His diagnosis was Perthes Disease (a disease in which changes take place in the bone at the head of the femur near the hip with deformity resulting) of the left hip with arthritic changes. Dr. Francis A. Scott, in a report dated February 28, 1961, found essentially the same conditions as those reported by Dr. Patterson. His diagnosis was also the same. In addition, however, he reported that plaintiff was treated by an injection of hydrocortone and advised to have weekly injections as necessary. He was of the further opinion that plaintiff would undoubtedly develop arthritic changes of the hip joint which would necessitate arthrodesis (a surgical procedure whereby a joint is fixed or fused—a basic purpose of the operation is to offer substantial relief from pain so that a person may walk and stand without discomfort). He did not indicate that such an operation was then necessary or advisable.

Dr. H. H. Cudden in a report dated June 5, 1961, stated that he had never examined the plaintiff before but found that he had a congenital malformation in the left hip joint which was a progressive condition. He was of the opinion

that plaintiff could not work standing and that he did not have sufficient education to perform office work. He did not offer any X-ray or laboratory studies.

Dr. John E. Stone reported on December 6, 1961, that plaintiff had a shortening of the left leg and a limitation of motion in the left leg and hip. He specifically stated that other joints were normal at that time. He also made no X-ray examination. His diagnosis was Calve-Legg-Perthes Disease. He also reported mild rheumatoid arthritis involving both knees and both elbows and wrists. He suggested an examination by an orthopedic surgeon. He did not indicate that any restriction had been imposed on plaintiff's activity.

Dr. A. A. Grebe, chief of orthopedics at the Memorial Center, performed an examination which was carried out on May 25, 1962. He verified the history of the disease and noted that plaintiff walked with a marked limp, favoring the left lower extremity. Flexion (forward movement) of the hip was limited somewhat, but there was no flexion deformity. The left leg was shortened and atrophy was present. X-rays showed incongruity of the hip joint with flattening of the femoral head and virtual disappearance of the femoral neck. He observed significantly that the problem was one of pain. If plaintiff were required to perform a job which required much walking or standing, Dr. Grebe was of the opinion that the pain might become disabling. He admitted that the degree of pain is difficult to evaluate. He concluded his report by stating:

"My recommendations in this case are that this patient be rehabilitated for some type of work that does not require excessive ambulation or standing and that if his pain is so great that he cannot engage in this type of work that he be offered an arthrodesis of the hip."

The record shows that plaintiff worked for the Appalachian Power Company from March 21, 1942, to August 23, 1960. After working at various laboring jobs, he was promoted to checker. This job entailed checking fans, water that cooled the transformers, and the burners for proper heat temperatures. He was next promoted to boiler condenser equipment operator which consisted of keeping the pumps running and checking thermostats to see that the equipment was working properly. Though plaintiff described the job as being fairly easy, it apparently required considerable walking. He has completed seven grades of school and was only forty-five years old in August, 1960, when the alleged disability began.

The evidence as a whole, both objective and subjective, clearly demonstrates that plaintiff does suffer from a hip condition which undoubtedly causes him pain, the degree of which is almost unascertainable. This evidence, however, does not show that he is thereby precluded from engaging in any substantial gainful activity, although he may not be able to perform his former job or one essentially like it. In fact, the medical evidence leads to the conclusion that he could be gainfully employed in a job which did not require excessive walking or standing. The fact that a person suffers from a condition which causes bodily pain and discomfort is not necessarily sufficient to prevent him from engaging in a substantial gainful activity has been recognized by the courts. Adams v. Flemming, 2nd Cir., 276 F.2d 901 (1960).

This court has considered all of the evidence of record of all types. On the basis of this evidence it is found that there is substantial evidence to support the decision of the Secretary that plaintiff is not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act, as amended. Plaintiff has also failed to meet the criteria set forth in Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962) for establishing the existence of a disabling impairment or impairments within the period covered by the instant application. Defendant's motion for summary judgment is granted.