Isabel DeFONTES

v.

Anthony J. CELEBREZZE, Secretary of Department of Health, Education and Welfare.

Civ. A. No. 2464.

United States District Court
D. Rhode Island.
Jan. 21, 1964.

---

Bruce M. Selya, of Gunning & LaFazia, Providence, R. I., for plaintiff.

Raymond J. Pettine, U. S. Atty., William J. Gearon, Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

This is an action under the provisions of Section 205(g) of the Social Security Act as amended 42 U.S.C.A. § 405(g), to review the final decision of the Secretary of the Department of Health, Education and Welfare, denying the plaintiff a period of disability under the provisions of Section 216(i) (2) (A) of said Act, 42 U.S.C.A. § 416(i) (2) (A). In accordance with the provisions of Section 205 (g) of said Act, the defendant has filed as a part of his answer to the plaintiff's complaint a certified copy of the transcript of the record, including the evidence upon which said findings and decision by him were based. He asserts that said findings and decision are conclusive because they are supported by substantial evidence.

This action was instituted on February 19, 1959 and during its pendency an order has been entered substituting Secretary Anthony J. Celebrezze for Former Secretary Abraham A. Ribicoff who had previously been substituted as defendant for Former Secretary Arthur S. Flemming.

According to said transcript of the record, the plaintiff on June 22, 1956, filed her application to establish a period of disability under said Section 216(i) (2) (A) alleging that she first became unable to work on April 26, 1950, following an industrial accident as a result of which she sustained a ruptured spinal disc. Her wage record establishes that the statutory earnings requirements were

met as of the second quarter of 1950, the alleged quarter of disability, and were last met in the quarter ending September 30, 1951. The Bureau of Old-Age and Survivors Insurance of the Social Security Administration, on November 27, 1956, determined that her impairment did not constitute a "disability" within the meaning of said Act and that consequently she was not entitled to a period of disability. On December 5, 1956, she filed a request with said Bureau for reconsideration of its decision and on December 26, 1956, the Bureau by letter advised plaintiff that after reconsideration its determination was confirmed. Plaintiff then requested a hearing before a Referee (now called Hearing Examiner). She was accorded a hearing on May 2, 1958 at which she testified and presented a report of her physician, Dr. Alphonse Cardi, in support of her application. She was not represented by counsel during this hearing.

In his decision rendered on May 28, 1958, the Hearing Examiner found that plaintiff was suffering from an impairment that was remediable and that it had not been established by her that there was any significant risk or danger to the plaintiff in undergoing the surgery which had been recommended to remedy her condition. He concluded, therefore, that she had not been suffering from a medically determinable impediment of such severity as to prevent her from engaging in some substantial gainful activity since April 26, 1950, as claimed by her, or from any time in or prior to said quarter ending September 30, 1951, and accordingly, that she was not entitled to a period of disability under said Section 216(i) (2) (A). Plaintiff's request for a review of this decision was denied by the Appeals Council on October 7, 1958.

As hereinbefore recited, the instant action was instituted on February 19, 1959. After filing his answer the defendant moved for summary judgment in his favor and the plaintiff moved for summary judgment in her favor, or, in the alternative, that this case be remanded to the Secretary for further consideration on the ground that no evidence had been presented at the hearing before said Hearing Examiner as to whether plaintiff could with reasonable safety undergo surgery to remedy her impairment. After hearing and a review of said transcript, I entered an order on June 20, 1960 denying each of said motions for summary judgment without prejudice and remanding this case to the Secretary for the purpose of allowing the plaintiff to present evidence as to the nature and safety of a remedial operation.

Following the entry of said order, the plaintiff requested that a further hearing be scheduled pursuant to said order, and forwarded a written medical report by her physician to be made a part of the record. The Appeals Council, after a further review of the case, found that there was additional documentary evidence in existence which plaintiff could have submitted at the earlier hearing. Without objection from plaintiff, it obtained this evidence and authorized a consultative examination of the plaintiff at the Government's expense and obtained a medical report of such examination. On June 23, 1961, the Appeals Council referred this case to another Hearing Examiner for the purpose of holding a further hearing. On August 3, 1961, counsel for the plaintiff, after examining the supplemental evidence which had been obtained by the Appeals Council, withdrew plaintiff's request for a further oral hearing and consented to a decision by the Appeals Council on the record as supplemented by evidence furnished by him and that obtained by said Appeals Council, as aforesaid. Thereafter, on November 7, 1961, the Appeals Council rendered its decision denying the plaintiff's application for the establishment of a period of disability and affirming the decision of the Hearing Examiner.

In its decision it found that plaintiff's impairment could be diminished with "reasonable effort and safety" and, in addition, that even if her impairment were not remediable, the evidence did not establish that plaintiff was suffering from an impairment of a continuously

disabling severity on or at any time prior to June 22, 1956, the date of the filing of her application.

■ Each of the parties has again moved for summary judgment. It is well settled that under the review provisions of Section 205(g) of said Act a District Court is limited to a determination as to whether the Secretary's findings of fact are supported by substantial evidence. Brunenkant v. Celebrezze, 1962, 7 Cir., 310 F.2d 355; Ferenz v. Folsom, 1956, 3 Cir., 237 F.2d 46; United States v. La Lone, 1945, 9 Cir., 152 F.2d 43; 42 U.S.C.A. § 405(g). The finality provided by said section not only attaches to the findings of facts themselves but likewise to the inferences and conclusions drawn from said facts if a substantial basis for them appears on the record. Brunenkant v. Celebrezze, supra; Folsom v. O'Neal, 1957, 10 Cir., 250 F.2d 946; Robb v. Celebrezze, 1963, D.C.La., 217 F.Supp. 732; Coomes v. Ribicoff, 1962, D.C.Kan., 209 F.Supp. 670.

■ "Disability" as defined in Section 216(i) (2) (A) of said Act means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or impairments, which can be expected to result in death or to be of long continued and indefinite duration. Such disability need not be a total disability. Little v. Celebrezze, 1962, 7 Cir., 310 F.2d 636; Kerner v. Flemming, 1960, 2 Cir., 283 F.2d 916; Adams v. Flemming, 1960, 2 Cir., 276 F.2d 901; Teeter v. Flemming, 1959, 7 Cir., 270 F.2d 871, 77 A.L.R.2d 636. In Teeter v. Flemming, supra, the Court said at page 874 of 270 F.2d, 77 A.L.R.2d 636:

"The Social Security statute does not require applicant to be completely helpless, but to be unable to engage in substantial and gainful activity (commensurate with his age, educational attainments, training, experience, mental and physical capacities) by reason of a medically determinable physical or mental impairment. * * * "

■ Impairments which are remediable do not constitute "disability" within the meaning of said Section 216(i) (2) (A). If with reasonable effort and safety, an impairment can be diminished to the extent that the individual subject thereto will not be prevented by the impairment from engaging in any substantial gainful activity, then such individual is not to be deemed under a "disability". Bradey v. Ribicoff, 1962, 4 Cir., 298 F.2d 855; Fields v. Celebrezze, 1963, D.C.Ky., 218 F.Supp. 334; Copelin v. Ribicoff, 1961, D.C.Mo., 194 F.Supp. 953; Craig v. Ribicoff, 1961, D.C.No.Car., 192 F. Supp. 479; 20 C.F.R. 404.1501(g).

■ And the fact that an individual cannot work without some pain or discomfort does not necessarily satisfy the test of disability under said Section 216 (i) (2) (A). Adams v. Flemming, supra; Hayner v. Celebrezze, 1963, D.C. West Va., 214 F.Supp. 689; Coomes v. Ribicoff, 1962, D.C.Kan., 209 F.Supp. 670; Hallard v. Flemming, 1958, D.C. Ark., 167 F.Supp. 205.

The record shows that the plaintiff was born on July 21, 1908. She completed six years of elementary school and, in addition attended night school for some indefinite time. In the decision of said Hearing Examiner she is described as "appearing much younger than her age and well spoken". It appears that prior to April 26, 1950, she had been employed at times as a saleslady and a factory bench worker in packing and inspecting work, and that at the time of her injury, in assembly work. Her work record indicates a picture of rather irregular and marginal earnings.

On April 26, 1950, while at work, she fell and injured her back and apparently has not worked since that date. During the hearing on her application before said Hearing Examiner on May 2, 1958, she testified that her former employer had sent her to several doctors for examination and treatment, and that each recommended surgery for her condition. She stated that she was unwilling to undergo an operation because a friend had

submitted to similar surgery without success. She testified generally that she had made unsuccessful attempts to obtain employment since her injury but furnished specific details as to only one such attempt, and claimed that she was unable to perform any work for any length of time.

It appears that after her injury plaintiff was hospitalized at St. Joseph's Hospital from July 18, to July 27, 1950 because of low back pain radiating down to her extremities. Findings on x-ray examination were consistent with a ruptured intervertebral disc at the fifth space on the right side. Straight leg raising was normal on the left, but limited on the right because of pain. The final diagnosis was ruptured intervertebral disc, fifth space, right side, and her condition was unimproved on discharge.

Subsequently, on May 7, 1951, the Director of Labor of the State of Rhode Island approved an agreement between plaintiff and her former employer which provided for the payment of workmen's compensation benefits to her in the sum of $26.52 per week for total disability from April 27, 1950, and during the period of such total disability. These payments were continued until July 5, 1955 when the Workmen's Compensation Commission of the State of Rhode Island, after a hearing, found that plaintiff was no longer totally disabled for work and reduced said weekly payments to $18 per week as compensation for partial disability.

The medical evidence in the record, supplemented as aforesaid by that obtained by the Appeals Council, consists of the hospital report of St. Joseph's Hospital, reports of plaintiff's personal physician, Dr. Alphonse R. Cardi, and reports of Dr. G. Edward Crane, an orthopedic surgeon, Dr. Wilfred Pickles, a neurosurgeon, Dr. John F. McGuire, a neurologist, Dr. A. A. Savastano, an orthopedic surgeon, and Dr. Manoel A. Falcao, an orthopedic surgeon who examined plaintiff on March 24, 1961 at the request of said Appeals Council.

In the report of an examination of the plaintiff made by him on February 23, 1951, Dr. Crane, after reviewing her symptoms, recommended that a laminectomy be performed upon her back. He stated that if a herniated disc was the cause of her difficulty such a procedure should relieve her of her discomfort. On the other hand, he added, if her discomfort was due to a swollen nerve root such a surgical procedure would, based on his past experience, relieve her of pain. He concluded that if the plaintiff was unwilling to submit to such surgery, it was his impression that with the use of a low back spring brace she could do light work. Plaintiff was again examined by Dr. Crane on November 5, 1951. At this time, according to him, plaintiff continued to complain of pain in damp weather or when she became overtired. As a result of this examination, he again recommended a laminectomy. He stated he did not believe plaintiff was totally disabled.

Dr. Crane made a third examination of the plaintiff on September 17, 1954. In his report of this examination he stated that plaintiff had informed him she was having no treatment except self-administered applications of heat. At this time, she complained of a nagging dull ache in her right leg, varying from time to time in intensity. Dr. Crane reported his examination disclosed no muscle spasm and that plaintiff could bend forward so that her finger tips reached within three inches of the floor, and that "she rises easily from a bended position". His report concluded as follows:

" * * * There is no question in my mind that this patient can do at least light work. She has some mild sciatic irritation, but because of the previous myelography findings, which suggest the possibility of a herniated intervertebral disc she probably should not do heavy lifting or frequent bending."

Dr. Wilfred Pickles examined the plaintiff on June 18, 1953. At that time plaintiff was complaining of low back

pain aggravated by coughing, sneezing or straining. He found that there were definite clinical indications of sciatic nerve irritation, presumbly due to protrusion of an intervertebral disc. He stated that if his examination of the results of a myelogram previously performed on plaintiff confirmed the existence of such a condition, plaintiff was entitled to an exploratory operation for the removal of the disc. He also stated that plaintiff said she did not want any operation "as long as she is able to get about in her present condition". He stated that he did not feel that the plaintiff was then able to do any work "involving walking, bending or lifting" but that "she could probably do light work in a sitting position". Additional reports by Dr. Pickles disclose that he also examined the plaintiff on February 8, 1954, on November 4, 1954, and on August 7, 1956. On each of these occasions he recommended surgery which plaintiff declined to undergo. In his report of his examination of August 7, 1956, he again stated that he had recommended surgery but that without surgery "she should do light work in a sitting position".

Dr. McGuire, in his report of his examination of the plaintiff on September 25, 1953, stated that plaintiff had moderate disability with pain in the right sciatic disc (sic) due to herniation of a lumbar disc. He found that she was partially disabled. He stated that the immediate prognosis for her early return to work was not good, "especially since the patient is most reluctant to accept recommended medical therapy". He also recommended a laminectomy for removal of the disc.

Dr. Savastano, who had examined the plaintiff on January 30, 1951, and had then made a diagnosis of a ruptured intervertebral disc, examined her again on March 28, 1955. In his report of that examination, he stated that her symptoms were "subjectively consistent with a ruptured disc, but objectively, there is very little to be found. I now consider the patient as having the ability to do light work."

In his report of his examination of the plaintiff on March 24, 1961, Dr. Falcao stated it was his impression that plaintiff had sustained a ruptured intervertebral disc on April 26, 1950 with sciatic nerve irritation. He also stated that since plaintiff had shown no signs of severe muscular atrophy it was possible some recovery could be obtained through surgery.

The remaining medical evidence consisted of four reports and statements from Dr. Cardi, the plaintiff's physician. In the first of these reports, dated June 27, 1956, he stated that he first treated the plaintiff on April 26, 1950, and had last examined her on June 22, 1956. His diagnosis was that she was suffering from a ruptured intervertebral syndrome and that her condition was static. In a later report, dated April 29, 1958, he stated that plaintiff's condition was only very slightly improved and that plaintiff was totally disabled from the standpoint of employment. He also stated that she was obtaining "marked relief" from physiotherapy received by her two or three times a month.

After the remand of this case for further hearing by me, plaintiff submitted two additional statements from Dr. Cardi, dated September 30, 1960 and August 10, 1961, giving his opinion as to the risk to the plaintiff involved in surgery designed to remedy her impairment. He stated that he was of the opinion that plaintiff should not undergo such surgery because of certain adverse changes in her physical condition which had taken place since April 26, 1950. He did not base his opinion upon any inherent risk in the operation itself.

■■ The existence or non-existence of these adverse physical conditions was a matter for the determination of the Secretary. In view of the conflicting opinions in the medical reports, the resolution of the issues as to the extent and nature of plaintiff's impairment and of whether it was remediable without any significant risk to the plaintiff was for

the Secretary as the trier of the facts. After a careful examination of the testimony of the plaintiff before said Hearing Examiner and the medical evidence and the reasonable inferences to be drawn therefrom, it is my considered judgment that the findings and conclusions by the Secretary are clearly supported by substantial evidence. Accordingly, the defendant's motion for summary judgment must be and it is granted. The plaintiff's motion for summary judgment is denied.