**Clyde R. DYE, Plaintiff,**

v.

**Robert H. FINCH, Secretary Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–107–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

May 27, 1969.

James R. Moore, Abingdon, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

Pursuant to 42 U.S.C.A. section 405(g), the claimant, Clyde R. Dye, has requested this court to review the decision of the Secretary of Health, Education and Welfare which became final on October 17, 1968 when the Appeals Council denied claimant's request for review. This final decision was adverse to claimant's request for the establishment of a period of disability under the Social Security Act section 216(i), 42 U.S.C.A. section 416(i), as amended, and for disability insurance benefits as provided for in the Social Security Act section 223, 42 U.S.C.A. § 423, as amended.

The court's only purpose in this review is to determine if there is substantial evidence in the proceedings to support the Secretary's decision, 42 U. S.C.A. § 405(g). If this court finds such substantial evidence, our inquiry must cease, and the Secretary's decision will be conclusive, Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). The function of this court is to determine if there is sufficient evidence to support the administrative findings.

## SUMMARY of the TESTIMONY of CLAIMANT

Claimant, a thirty-nine year old male, alleged in his application that he had been unable to work since July 28, 1966 because of an injured left knee and back and a thyroid condition. He is almost illiterate, having had only one year of schooling and has worked as a coal loader nearly all his life. He testified that he injured his knee in July, 1966, and thereafter had corrective surgery performed by Dr. Henderson. After a long period of recovery he returned to work, but he subsequently injured his back while jacking up a coal car and he had to terminate his employment.

## SUMMARY of the MEDICAL EVIDENCE

The medical evidence in the record consists of nine medical reports, dated between May, 1967 and June, 1968. These reports establish that the claimant's three main complaints stem from the residuals of meniscectomy surgery on his left knee, a low back pain and a psychiatric problem described as a chronic severe conversion reaction. The medical report most favorable to the claim of disability is dated June 14, 1968, and states the claimant has "classical evidence of an acute left lower lumbar disc lesion which in our opinion disables him for work of any consequence and it is likely that this disability will continue for the foreseeable future unless surgery is done."

However, the clinical findings and conclusions of three Board certified specialists in orthopedic and neurological surgery with regard to claimant's knee and back condition do not help the claimant's cause. Dr. Hillier, who saw claimant in July, 1967 stated that he doubted "seriously that he has a herniated intervertebral disc." Dr. Raub, who saw claimant in August, 1967 admitted that he really could not tell whether claimant had a disc lesion in the back or not, but noted that "There is not enough neurological evidence at this time and certainly he [the claimant] does not have any significant back spasm to warrant any surgery. * * *" In September, 1967, Dr. McFaddin examined claimant and reviewed x-rays of the spine and concluded that there was "no evidence of lumbar root compression or neurological deficit at the present time. * * *"

As for claimant's knee, he states that as a result of an injury and the following corrective surgery performed by Dr. Henderson, he cannot put his left foot down flat and he cannot straighten out the left leg. The orthopedic examiners are extremely skeptical of the left knee posture since there is no evidence of effusion, osteoporosis, or significant atrophy which is customary with a flexion contracture. The specialists doubt the existence of any locking mechanism. Dr. Hillier in his report stated that the flexion contracture in the claimant's knee was "a most unusual situation following the removal of a tear in the medial meniscus and the surgical removal thereof." Dr. Raub noted that the claimant throughout his examination maintained a flexion contracture position of the knee, "although he did relax it on one occasion so that it almost straightened out." Dr. McFaddin in his examination report stated that "the knee will extend and will flex, at times, to practically a normal range of motion, particularly [sic] when he is lying in the prone position." He concluded, "I would recommend psychiatric consultation, since I find no evidence of significant orthopedic impairment."

As for the claimant's psychiatric problem described as a chronic severe conversion reaction, the record states that two examinations were performed. Both psychiatrists found evidence of psychiatric impairment, but neither described an individual who could not return to his customary work as a coal loader because of any emotional pathology. One of the psychiatrists, Dr. Nelson, who examined the claimant in November, 1967, stated that the claimant said he would like to be hospitalized so that he could be cared for by others and that he would also like to get some social security and welfare for his family. He also hoped that Dr. Nelson would find him "disabled enough for compensation." When Dr. Nelson questioned the claimant about his left leg which he was favoring, the claimant favored it even more in a rather dramatic fashion.

## THE LAW and ARGUMENT

As defined in the Social Security Act in section 223(d), 42 U.S.C.A. § 423(d) (1), (2) (A) and (3), as amended, (Supp.1969), disability means—

* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.

* * * * * *

* * * an individual * * * ability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives; or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * * * * *

For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

This amended definition applies to court decisions which have not become final before January, 1968. Pub.L. No. 90–248, section 158(e) (2) (B), 81 Stat. 821.

■■ In order to be entitled to a period of disability under section 216(i), 42 U.S.C.A. § 416(i), and to disability insurance benefits, under section 223 of the Act, 42 U.S.C.A. § 423, claimant has to establish that he was under a disability, as defined above, which commenced at a time when he met the special insured status. Claimant meets the special insured status requirements during the effective life of his application and continues to meet them until December 31, 1969. Therefore, on the basis of his application of May 17, 1967, claimant must establish that his disability commenced prior to October 17, 1968, the date the Secretary's decision became final.

A preponderance of the medical evidence is to the effect that the claimant's physical and mental impairments would not preclude his performing his usual work. We think this medical evidence is sufficient to insulate the decision of the Secretary from reversal by this court.

As for the psychiatric problem alone, and the "miner's syndrome" which is displayed by the claimant, this court said in Bower v. Celebrezze, 211 F.Supp. 39 (W.D.Va.1962), the fact that one is poorly motivated to do work is not evidence of a disabling medical impairment. In addition, a case cited by the claimant in this appeal, Brandon v. Gardner, 269 F.Supp. 169 (S.D.W.Va.1966), reversed on other grounds, 377 F.2d 488 (4th Cir. 1967) states that a claimant's little if any desire to return to work as long as he can continue to receive welfare is a social illness which is not the sort of mental disability contemplated within this section's (42 U.S.C.A. § 423) meaning of a medically determinable mental impairment.

■ The hearing examiner considered the objective medical evidence, as well as the factor of pain and as the trier of facts his findings and the reasonable inferences therefrom are conclusive. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). As there is no objective medical evidence to indicate that claimant's total condition is such as to prevent him from doing his usual work, the hearing examiner correctly found claimant could do his usual work and was, therefore, not disabled within the meaning of the Social Security Act. Brown v. Celebrezze, 347 F.2d 227 (4th Cir. 1965); Frankum v. Celebrezze, 343 F.2d 426 (4th Cir. 1965).

Our review of the entire record convinces us that the decision of the Secretary is supported by substantial evidence. Accordingly, the defendant's motion for summary judgment is hereby granted.