Edward B. EMMETTE, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary,
Health, Education and Welfare,
Defendant.

Civ. A. No. 70–C–25–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Nov. 17, 1971.

Glen M. Williams, Jonesville, Va., for plaintiff.

James G. Welsh, Asst. U. S. Atty., Roanoke, Va., for defendant.

DALTON, District Judge.

Edward B. Emmette, the claimant, brings this action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for judicial review of the final decision of the Secretary of Health, Education and Welfare, denying claimant the establishment of a period of disability and disability insurance benefits under the Act, as amended, 42 U.S.C.A. §§ 416(i) and 423. After remand from this Court, the Appeals Council rendered the final decision of the Secretary on May 27, 1971, when it adopted the recommended decision of the hearing examiner dated May 7, 1971. The sole issue in this proceeding is whether the Secretary's decision is supported by substantial evidence. 42 U.S.C.A. § 405(g); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The claimant filed his application for disability insurance benefits on December 5, 1968, alleging disability from June 18, 1968, because of arthritis and bursitis in both shoulders. The application was denied initially, and upon reconsideration. By request, a hearing

was held in Jonesville, Virginia, on August 15, 1969, at which the claimant, represented by counsel, appeared and testified; Allie Emmette, claimant's wife, and Dr. H. A. Kinser, a physician, also appeared and participated. Based upon the record evidence, the hearing examiner held that Emmette had failed to show by competent medical evidence that he was suffering from an impairment, or impairments, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application was effective. The Appeals Council denied the claimant's request for review.

■ This Court remanded the case to the Secretary in order to take further evidence on the existence and nature of Emmette's alleged pain. The Appeals Council subsequently adopted the recommended decision of the examiner denying disability benefits, based upon evidence developed in a supplemental hearing. Because the claimant met the special earnings requirement until September 30, 1971, he must establish that his disability commenced prior to May 27, 1971, the date the Secretary's decision became final. *See* Dye v. Finch, 299 F. Supp. 481 (W.D.Va.1969).

The pertinent facts are not disputed. The claimant is 53 years old and resides with his wife in Jonesville, Virginia. He possesses a seventh grade education, but has had no special vocational training. After working briefly for an electrical contractor, he began working in the mining industry, which he continued to do for almost 30 years until he quit in August, 1966. In mid-1967 he was employed as a hospital orderly, but returned to the mines in October, 1967, to his customary and more remunerative job. Allegedly because of his disabling condition, he left the mines on June 18, 1968, and has not worked since.

The medical evidence is voluminous. A report by Dr. Loyal K. Wilson, dated December 18, 1968, reveals that Emmette had been treated in the Daniel Boone Clinic for periodic shoulder pains. The doctor indicated that the tenderness over the subacromial bursa, painful on manipulation, and the inability of the claimant to raise the shoulders above a right angle suggested bursitis, for which the claimant had been previously treated by injections of celestone. In a latter undated notation, Dr. Wilson observed that the shoulder condition was not improving.

The claimant was subsequently examined on January 20, 1969, at the Appalachian Regional Hospital by Dr. Charles L. Kirkpatrick, for shoulder and back pains. Emmette revealed that he suffered these pains after overworking; that they persisted when he went to bed, but did not prevent sleep; that they were more severe upon awakening but improved as the day progressed; and that he finally quit the mines because of the pains, but could not remember any specific injury inducing them. The only significant abnormal finding was claimant's inability to raise his arm above his shoulder and a general tenderness in the shoulder joint. Other physical movements did not appear painful nor restricted; all reflexes were present and active. Dr. Kirkpatrick diagnosed the impairments as: "1) Bursitis, chronic, shoulder, left. Symptomatic. 2) Arthritis, osteo, chronic, lumbar spine, mild. Symptomatic. 3) Emphysema, pulmonary, mild to moderate. Symptomatic." He also commented:

It is believed that patient does experience pain in the left shoulder. His right shoulder is not symptomatic at this time. The findings on physical examination of the lumbar spine at this time, would not suggest major severity, although this [one] is listed by the patient as one factor of causing him to stop working in the mines. There is probably a mild to moderate emphysema; however, he did not list this as a factor in his decision to stop work in the mines.

Included in the doctor's report was the X-ray report of Dr. Paul O. Wells, who stated that there was no evidence of significant bone or joint abnormality in the right shoulder; the examination did dis-

close, however, "mild scoliosis and moderate hypertrophic changes of the lumbar spine." This report comported with a similar 1965 report, which Dr. Wells interpreted as demonstrating no evidence of significant bone, joint or tissue abnormality.

Dr. H. A. Kinser, who had seen the claimant at various times during the preceding fifteen years, reported in April 1968 that in his most recent examination earlier that month the physical findings were normal except for stiffness and generalized tenderness in the shoulders. The diagnosis was: "1. Non-calcific bursitis, both shoulders. 2. Osteoarthritis of the spine. 3. Pulmonary fibrosis and emphysema, some diminished pulmonary function." He added that he did not think Emmette was malingering, and that he would work if he could. Shortly thereafter, pulmonary function studies were conducted by Dr. Gilbert Hamilton, an internist, who found first second timed vital capacity was 67.3% (of 4750 ml.) and indirect maximum breathing capacity as 115 liters.

After the initial hearing, the claimant was examined by Dr. J. B. Nichols, a specialist in neurological surgery, to determine possible neurological origin of the pains. The physician concluded in his report dated December 18, 1969, that " * * * this patient's symptoms are probably on the basis of musculo-ligamentous factors. There is no significant evidence of nerve involvement in his case."

At the first hearing Emmette testified that the pains have been most severe in the shoulders, sometimes radiating to the neck, arms and lower back. The discomfort manifested itself occasionally in sharp, intense pain, and at other times in more dull, constant pain. At various times he has been treated with injections, and has been advised to sleep with a board under his mattress and to ingest aspirin. He denied stating to Dr. Kirkpatrick that the pain did not prevent sleep, and asserted that the inability to work was primarily caused in

fact by lack of rest due to the pain. Also contrary to the doctor's report, he has suffered more pain in his right, rather than his left, shoulder. He takes care of all personal needs, works in the garden, and helps his neighbors in theirs. He stays fairly active physically so that his shoulder will not "freeze". Allie Emmette generally confirmed her husband's testimony.

Dr. Kinser, who also appeared at the hearing, reiterated Emmette's assertion that the major cause of his disability is night pains, which prevents rest at night. He noted that the claimant had shoulder pains for several years, and that he was beginning to experience mild breathing difficulties upon exertion. He did not believe Emmette was malingering, but he was unable to diagnose the cause of the pains. He observed that the degree of claimant's arthritis was no worse than was common to other individuals of the same age. The doctor did not prescribe narcotic pain killers. Dr. Kinser also read into the record the report of Dr. Joe Crumley, an orthopaedic surgeon, who saw the claimant in consultation in November, 1968. Dr. Crumley noted that Emmette had been bothered by pain for the preceding four months. He found some loss of arm motion and deltoid atrophy, with tenderness in the shoulders, but the x-rays showed no calcification. The claimant was released, after being treated with local injections and asteroid.

After remand from this Court, the claimant was examined by Dr. J. G. McFaddin, an orthopaedic surgeon, for evaluation of orthopaedic impairments relating to the shoulders and back. After concluding that the claimant's sole impairment appeared to be in the lumbar region, manifested by difficulty in full forward motion, he observed:

There is no evidence of derangement of the joints or arthritic changes. I certainly find no evidence of bursitis or capsulitis.

* * * * * *

It would appear to this examiner that Mr. Emmette is able to continue with

work which does not require the most prolonged or strenuous use of the back and lower extremities.

\*   \*   \*   \*   \*   \*

His functional limitations in terms of ability to stand, sit, walk, push, pull, manipulate his arms and fingers, climb stairs, use public transportation, and drive vehicles is unlimited. As previously stated, it would appear that he should limit his bending, and limit his lifting to weights of twenty-five to fifty pounds. His capacity to perform medium or strenuous activity on a sustained basis would appear to be well within normal limits.

Subsequently, Dr. Charles L. Kirkpatrick re-examined the claimant at the Appalachian Regional Hospitals; his findings were in substantial agreement with those of Dr. McFaddin. Generally, the claimant moved with no pain or restrictions; however, he could not, without difficulty, lift his arms above his shoulders and there seemed to be generalized pain in the shoulder area. His diagnosis corresponded to that in his earlier report, dated January 20, 1969, and he commented:

> \*   \*   \* [The] patient does have rotator cuff tendinitis (Subdeltoid bursitis), even though the physical findings are not characteristic of same. There should be no limitation of ability to stand, bend, walk, stoop, climb steps, or use public transportation. There is probably difficulty and pain in carrying, pushing, or pulling a heavy load. No contraindications to perform strenuous physical activity insofar as heart is concerned. Chest pains are not those of angina. There may be some pulmonary insufficiency which would limit prolonged sustained activity. \*   \*   \* Patient is on no medication for his arthritis, bursitis or chest pain.

Included in the report were electrocardiographic and pulmonary function studies, both interpreted as within normal limits.

At the supplemental hearing on April 30, 1971, the examiner incorporated the testimony recorded in the prior hearing; all of the medical evidence introduced prior to the later hearing were submitted to Dr. Gilbert Hamilton, who testified in his capacity as medical adviser. He agreed that the claimant's major difficulties involved his shoulders and back, manifested by pain and some reduction in facile movement. Because the objective medical facts did not fully demonstrate the disabling nature of the pain, he surmised that no one but the claimant could know its severity. He did note that the pain was not intractable, since the record indicated that there have been periods in which he was free from pain. Dr. Hamilton concluded that the impairments, in combination, were of moderate severity, which would preclude prolonged use of the arms and shoulders, particularly frequent bending or lifting objects exceeding fifty pounds.

Dr. Charles F. Elton, a vocational expert, testified that claimant could not return to his former jobs, but that considering his age, education, work experience, and the medical evidence, he possessed the residual capacity to enable him to engage in certain entry-type jobs, involving only light physical activity and requiring no special training, to wit: watchman, gate guard, janitor, porter, kitchen-helper.

■■ In this proceeding the initial burden is upon the claimant to prove that he is under a disability as defined by the Act, 42 U.S.C.A. § 416(i), Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Underwood v. Ribicoff, supra; it is not the burden of the Secretary to make an initial showing of non-disability. To be disabled within the meaning of the Social Security Act the claimant must show an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months. 42 U.S.C.A. § 416(i) (1) (A); *See* Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The medical reports substantiate, albeit in varying degrees, the existence of the back and shoulder impairments of which Emmette complains. However, the medical evidence regarding the precise nature and the severity of these impairments is conflicting. With some exceptions, it is clear that the claimant's movements are active and unrestricted. Thus, it is generally determined that without discomfort he could sit, bend, stand, stoop, walk, manipulate his fingers and arms, manage his personal affairs, use public transportation, and drive a vehicle. During some of the examinations it was observed that the claimant had difficulty bending completely forward. Lumbosacral x-rays revealed moderate osteoarthritic changes, commensurate with his age; there were no other significant abnormal findings regarding his back. It is not disputed that the lumbosacral impairment contributes to the claimant's inability to engage in strenuous physical activity, notably that requiring extensive lifting. Claimant's primary problem nevertheless centers around the pains in his shoulders.

Although pain, in and of itself, may be a factor in ascertaining disability, Darter v. Cohen, 299 F.Supp. 473 (W.D.Va.1969), it can constitute disability only if it is not remedial or is such as to preclude the claimant from engaging in substantial activity. Garboden v. Secretary of Health, Educ. and Welfare, 258 F.Supp. 370 (D.Or.1966). In assessing the pain's effect on the claimant's ability to work, the Secretary or a court reviewing his decision should neither disregard nor rely solely on the claimant's protestations of pain. Wells v. Cohen, 296 F.Supp. 276 (W.D.Va. 1969).

The claimant alleges that he suffers constant pain, which prevents rest necessary for him to perform work adequately during the day. Review of the record somewhat contradicts this assertion. Physical examinations which included X-rays revealed no significant abnormal findings with respect to possible joint, muscle, or tissue impairments of the shoulders; neurological examinations equally ruled out nerve involvement. Nor were there observable criteria such as loss of weight or impairment of nutrition, which would normally present themselves as indirect signs that claimant suffered constant pain. Even Dr. Kinser was uncertain of the pain's origins. Claimant takes no medication for the pain; although Dr. Kinser advised that any medication strong enough to alleviate the pain would raise new problems of addiction, it is clear that injections at various, but not periodic, times were successfully administered with no undesired effects. Moreover the claimant's own statements and actions appear to conflict with the observable criteria. There is conflict between his statements indicating which shoulder gave him the greater pain and the results and observations noted by Doctors Kirkpatrick and Wells. Claimant also testified that he could not easily raise his arms to comb his hair nor to put on a shirt, yet several of the physicians noted that claimant had little or no difficulty or pain in movement, and the claimant himself testified that he manages his personal needs and works outdoors in his garden and those of his neighbors. In any case the Secretary concedes that the claimant suffers from some form of bursitis, the disabling condition of which is the pain. The Secretary however opined that, based on the medical evidence, the pain is intermittent rather than constant. The Court agrees that the pain is not so constant or severe, nor the opportunity to rest so restricted as the claimant suggests, in light of his contradictory statements and actions, and the absence of substantial medical evidence to support the allegation. 20 CFR Subpart P, App. § 1.00(A) at p. 322.

**368**

It is clear that Emmette is unable to perform those jobs requiring strenuous physical activity to which he has been accustomed, although he did advise the hearing examiner that he left the hospital to return to the mines for monetary reasons, not because of the impairments. The examiner nevertheless determined that the functional limitations induced by the maladies, did not preclude the claimant's engaging in any form of gainful work. The Court is aware that claimant suffers a slight degree of breathing impairment; however the breathing studies were interpreted as normal, and claimant has moreover not relied on the possible impairment as a basis of disability. Hence the vocational expert opined that he retained the residual capacity to perform suggested available jobs, previously noted, requiring no special training nor strenuous physical activity. This determination was reasonable. Admittedly the claimant suffers some degree of pain and discomfort, the extent of which only he knows for certain; but he has not sustained his burden of proving that his impairments, taken together, preclude *all* gainful activity. It is well-established moreover that the inability to work without some pain or discomfort does not of itself render the claimant disabled. Hayner v. Celebrezze, 214 F.Supp. 689 (S.D.W.Va.1963).

It is not within the province of the Court to substitute its judgment for the Secretary if his decision is supported by substantial evidence, that is, evidence that a reasonable mind would accept as sufficient to support a particular conclusion. 42 U.S.C.A. § 405(g); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1964); Underwood v. Ribicoff, supra. Within this scope of review, the Court is convinced that the Secretary's decision denying the claimant's application is supported by substantial evidence. Accordingly, it is ordered that the defendant's motion for summary judgment be hereby granted.