George W. BURKE

v.

David MATHEWS, Secretary of Health, Education and Welfare.

Civ. A. No. 75–0335.

United States District Court,
W. D. Virginia,
Abingdon Division.

Dec. 10, 1975.

Carl E. McAfee, Norton, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

Plaintiff brings this action seeking review of the final decision of the Secretary of Health, Education and Welfare denying plaintiff the establishment of a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Plaintiff meets the insured status requirements of the Act through December of 1978. Consequently, the only issue posed is whether there is "substantial evidence" to support the conclusion of the Secretary that plaintiff was not disabled under the pertinent criteria of the Act at any time prior to the final decision of the Secretary.

The evidence developed below established that the plaintiff, George W. Burke, was born on February 2, 1926 and subsequently completed the eighth grade in school. Mr. Burke received no additional educational or vocational training. Mr. Burke served in the U.S. Navy during World War II. After his discharge, plaintiff worked as an equipment operator in the Nation's coal mines. Plaintiff quit working in the mines in 1964 because of two broken legs suffered when he was caught between two automobiles. From 1966 until 1968, Mr. Burke was employed as a clerk for the Virginia A.B.C. Board. He worked as a foreman for a concrete company from 1968 until 1974, at which time he felt it necessary to resign because of exposure to dust. Plaintiff was last employed as an equipment operator for the highway department for five months in 1974. Mr. Burke was awarded "black lung" benefits under the Federal Coal Mine Health and Safety Act on July 22, 1974. As a result of emphysema and "black lung," Mr. Burke now alleges that he is unable to engage in any substantial, gainful employment. Plaintiff further alleges that he became disabled on August 29, 1974 and that such condition could have been expected to last for a period exceeding twelve months.

Most of the medical evidence developed in this case concerns plaintiff's breathing condition. The earliest medical evidence consists of a chest x-ray interpretation by Dr. D. S. Dixon dated November 21, 1972. Other than his notation of an old rib fracture, Dr. Dixon's findings were unremarkable. A pulmonary function study was completed by Dr. James Baker on August 21, 1973. Dr. Baker discovered a mild reduction of MMEF and $FEV_1$, which he held to be indicative of mild obstructive lung disease. A medical report from Dr. James Buis, dated November 20, 1973, also noted the existence of air flow reduction as well as minimal fibrosis and chronic antral irritation. At that time, Dr. Buis opined that his findings were not consistent with a diagnosis of pneumoconiosis. However, Dr. Buis concluded in a report dated January 4, 1974 that plaintiff's lung condition had progressed to a degree sufficient to warrant a finding of pneumoconiosis, category II. Pul-

monary function studies conducted in November of 1973, were described by Dr. Buis in his analysis. Plaintiff's MVV was reduced although his $FEV_1$ and blood gas study values were almost normal. Dr. Buis opined that plaintiff's "coalminer's disability" claim was justified. (TR 88).

On May 28, 1974, Dr. Meyer Jacobson read x-ray film dated February 29, 1974 as indicative of pneumoconiosis, ½ p. A final pulmonary function study was completed by Dr. Orhan Muren on November 20, 1974. Dr. Muren described the testing as indicative of a mild degree of obstructive lung disease.

In addition to the medical evidence, Mr. Burke presented his own testimony in support of his claim. Mr. Burke testified that he is unable to do yard work and limits his current activities to attending church and watching television. He noted that he suffers from shortness of breath and lack of energy. He also observed that his legs swell when he walks or stands on concrete. He stated that he has arthritis in his back. He also stated his belief that he has "permanent disability to both legs." (TR 37). Plaintiff testified that he is on medication for his breathing condition and that such condition has worsened in the last several years. Mr. Burke noted that his condition is adversely influenced by wet weather, heat, and smog.

■ The Administrative Law Judge, in an opinion eventually adopted as the final decision by the Secretary, found that Mr. Burke was not under a disability as defined under the Social Security Act at any time prior to the date of the opinion. The court has determined that the Secretary's final decision is supported by "substantial evidence" of record.

■ The mere fact that Mr. Burke has qualified for "black lung" benefits is in no way determinative of his capacity to undertake other forms of employment. Indeed, under his statutory burden of proof, plaintiff must establish disability for *all* forms of substantial, gainful employment. While it has been previously determined that Mr. Burke is entitled to a regulatory presumption of disability for coal mining employment, the court notes that none of the medical reports, impressions, or diagnostic observations suggest plaintiff's disability for his last immediate position or other forms of employment. Even assuming that all of Mr. Burke's subjective complaints are supported by the medical record, plaintiff has not established that his impairments, in their totality, create significant functional limitations. Indeed, the inability to do work without some subjective complaints does not of itself render a claimant disabled. *Emmette v. Richardson,* 337 F.Supp. 362 (W.D.Va., 1971).

The court may not substitute its judgment if the Secretary's final decision in this case is supported by "substantial evidence" and must be affirmed. The court notes that Mr. Burke has insured status through the fourth quarter of 1978 and, since his impairment is progressive in nature, he may wish to refile a claim for disability benefits at a later time.